## GONZALES v. TOYE BROS. YELLOW CAB CO.

### No. 17388.

Court of Appeal of Louisiana. Orleans.

Nov. 4, 1940.

Rehearing Denied Nov. 8, 1940.

A. D. Danziger, of New Orleans, for appellant.

Daly & Hamlin, of New Orleans, for appellee.

JANVIER, Judge.

On the afternoon of December 22, 1938, plaintiff, Mrs. Rosabelle Gonzales Bourgeois, sustained physical injuries while a passenger for hire in a taxicab owned by defendant and operated by one of its employees. She seeks recovery of $300 to compensate her for her disability and suffering and for the medical expenses which resulted.

She alleges that she and her sister, Mrs. Elizabeth Curet, entered the cab in front of the D. H. Holmes store on Canal Street and instructed the chauffeur to drive to 1017 North Dupre Street and that he proceeded out Canal Street to Claiborne Avenue and had turned to the right, down that avenue, when he brought the cab to a stop so suddenly and unexpectedly that both she and her sister were thrown from their seat against the rear portion of the front seat with such force that they sustained injuries. She charges that the chauffuer did not stop his cab as he reached the corner, but, on the contrary, turned while proceeding at a speed of twenty-five miles per hour and continued down Claiborne Avenue

380

at that rate for thirty-five or forty feet, when he violently applied his brakes, with the result mentioned above.

Defendant admits that plaintiff was a passenger, as alleged, and they do not dispute that she sustained injury, but they aver that the cab was being driven at a safe and reasonable speed, when suddenly and without warning, a boy on a bicycle emerged into its path, coming out from beyond two parked automobiles, when the cab was so close that the boy would have been struck had not the chauffeur applied his brakes violently. Defendant also avers that the cab was under proper control at the time and maintains that, in the emergency created solely by the action of the boy on the bicycle, the chauffeur did what any other prudent operator would have done, and that, consequently, there is no liability.

The amounts claimed are $278 for physical injuries and $22 for medical treatment and drug bills. There was judgment below for plaintiff for $100, the judge a quo having first maintained an exception of no right of action in plaintiff to claim the $22 on the ground that, during the existence of the community between herself and her husband, only her husband could present this claim. From this judgment defendant has appealed and plaintiff has answered the appeal, praying that the amount awarded be increased to $300.

The record shows that after the two ladies entered the cab they paid no attention to the action of the driver, except that they are both quite certain that he was operating the cab at a speed of twenty-five miles per hour and that, at this speed, he dashed around the corner into Claiborne Avenue without first either stopping or slowing down. Neither of the ladies, however, noticed whether the traffic light at the corner was red or green as the turn was made.

The chauffeur, on the other hand, states that, before making the turn, he brought the cab to a stop because the traffic light facing him showed red; that, as it turned to green he shifted his gears into first, or low, and then proceeded to turn the corner; that after he had proceeded about thirty-five feet into Claiborne Avenue and just as he had shifted into second, or intermediate speed, a young boy on a bicycle emerged suddenly into the street only a few feet in front of the cab; that at that time the cab was proceeding at a speed of six or eight miles per hour, and that he, the

chauffeur, applied his brakes and brought the cab to a sudden stop. He explains his failure to see the boy sooner by the presence of two automobiles parked along the right-hand curb, one alongside the other, and he says that the boy was screened from his view by these two cars until the front of the bicycle had passed beyond the outside car. His statement concerning the movement of the bicycle is corroborated by Billy White, the young boy who was on the bicycle, and from whose testimony on this point we quote:

"A. * * * I turned into the gas station to get air and I came out, and I didn't know that the green light had turned and I was coming out straight, didn't have time to know which way I was going to turn, * * *.

"Q. Could you tell us whether there were a couple of cars parked at that corner of Claiborne and Canal? A. Yes, sir.

"Q. You came from the oil station and came from behind one of those cars into the roadway, is that right? A. Yes, sir.

"Q. After you got into the roadway is the first time you saw the cab, is that right? A. Yes, sir.
* * *

"Q. And when you first saw the cab about how far away from you was the cab? A. Right near the two automobiles that were parked.

"Q. Right close to where you were coming out, was it not? A. Yes, sir.

"Q. Did that cab driver have much time to stop? A. No, sir.

"Q. Did he make a quick stop? A. Yes, as quick as he could."

It is true that the boy says that the cab "was going real fast when it came down Claiborne", but, as has already been shown, he did not see it until the instant before, and therefore, we think, was not capable of accurately judging its speed. It no doubt appeared to him that it was approaching at high speed, frightened as he was by the imminence of the danger. The evidence shows conclusively that the cab was brought to a stop within a very few feet after the application of the brakes and that, in spite of the suddenness and violence with which the application of the brakes was made, it skidded only two or three feet. Surely this is not indicative of excessive speed.

Boulmay, employed at the service station at the corner, says that, though he did not

see the car until it was brought to a quick stop, he heard it stop and saw the skidmarks and estimated its speed at about twelve miles an hour.

There is also evidence which leads to the conclusion that the two ladies, after the accident, and before they had given thought to the possibility of financial recovery, made statements in praise of the action of the chauffeur and exonerating him from blame. They both deny, however, that they made such statements favorable to defendant. The plaintiff admits that she made a statement, but says that she has no recollection at all concerning what she said. Her sister, Mrs. Curet, denies having made any statement, saying that she was unconscious for several days after the accident, and yet she admits that, during that period, Mr. Duke, the adjuster for the defendant, did call upon her. She says that she doesn't know whether she made any statement, testifying that: "If I did, I don't remember. He must have took me when I was unconscious." She admits that she had a talk with the adjuster in the presence of her daughter and yet her daughter was not produced to corroborate her statement as to her condition when the adjuster consulted her.

■ All in all, we conclude that the cab was not going at an excessive rate of speed as it turned down Claiborne Avenue and that the chauffeur did what seemed to him proper in the emergency created by the action of the young boy.

■ Of course, carriers for hire must exercise a high degree of care. In fact, it has been often said that they must exercise the highest degree of care. But, as is said in Huddy's Encyclopedia of Automobile Law, Ninth Edition, Vol. 5-6, section 161: "While the operator of a public automobile is obligated to exercise a high degree of care, he is not charged with the necessity, either of possessing superhuman powers of anticipation or of exercising such powers in a threatened emergency."

In Upton v. Bell Cabs, Inc., et al., La. App., 154 So. 359, concerning the fact that there is no liability in a public carrier where the accident results from an emergency created entirely by causes for which the carrier is not responsible, we said: "There is also a rule of law that, if one is confronted with a sudden emergency which is not in any way brought about by his negligence, he is not liable even if it is

subsequently shown that by acting differently under the circumstances the accident would have been avoided. Mitchell v. Ernesto et al., 153 So. 66, decided by this court March 12, 1934, and authorities cited therein."

■■ It is also well established in our jurisprudence that, where a passenger is injured in an accident the cause of which the passenger can know nothing about, the burden is on the carrier to prove itself free from fault, and, where the cause is claimed to be a sudden emergency created entirely by some third person, the carrier is under the necessity, if it would absolve itself from liability, of showing that neither it nor any of its employees was in any way involved in the creation of the emergency and also that the operators of the vehicle in which the passenger was riding did all that they could (even though it was not the best thing) to prevent the accident.

■ If we apply these rules to the proven facts here, we find no actionable negligence in the chauffer. Even if it be conceded that the speed was as high as twenty-five miles per hour as the cab was proceeding down Claiborne Avenue, there is nothing to show that this was excessive. The accident did not occur at the corner, where it might be anticipated that automobiles or other vehicles might be expected to emerge from the usual crossing place, but thirty-five feet below the corner, where there was no reason to expect that anyone or anything might come out from beyond the two parked automobiles. Of course, it is always possible that someone will emerge into a street even at an extreme distance from a corner, and, therefore, automobiles must always be driven at a speed which will permit of their being stopped within a reasonable distance. But surely it cannot be said that, in such a place as that in which this accident happened, a speed of eight, ten or twelve, or even twenty-five miles per hour, was dangerously excessive.

The evidence shows beyond the shadow of a doubt that an emergency existed, that the chauffeur was not negligently involved in the creation of that emergency, and that what he did was not obviously the wrong thing. It is rather clear that, had he not applied his brakes suddenly, the boy would have been struck, and, all in all, we think he acted as any other prudent and reasonably alert operator would have acted in such circumstances.

It is therefore ordered, adjudged and decreed that the judgment appealed from be and it is annulled, avoided and reversed, and that there now be judgment dismissing plaintiff's suit at her cost.

Reversed.