On the evening of November 25, 1939, at about the hour of 5:45 o'clock, plaintiff, Miss Gertrude Oppenheim, sustained physical injuries while a passenger for hire in a taxicab owned by defendant and operated by one of its employees. She seeks recovery of $6,808.62 to compensate her for her disability and suffering and for the medical expenses which she incurred.
She alleges that she entered the taxicab at 2601 Royal Street and instructed the chauffeur to drive to her residence, No. 7832 Oak Street. She further avers that the cab was proceeding on South Carrollton Avenue in the direction of St. Charles Avenue; that at the same time the co-defendant, Louis H. Edyburn, was operating his automobile on South Claiborne Avenue, proceeding in the direction of Jefferson Parish, and that both the cab and the Edyburn car were proceeding at a rate of speed in excess of that prescribed by the traffic ordinance of the City of New Orleans. She charges that the cab entered the intersection of South Claiborne and South Carrollton Avenues when the semaphore light directing the flow of traffic on Carrollton Avenue indicated amber and red against the said traffic, and that Edyburn entered said intersection when the traffic light indicated amber against the flow of traffic on Claiborne Avenue. She further avers that the taxicab and the automobile collided in the intersection and that she was thrown forward by the impact against the partition which separates the space occupied by the passengers from that occupied by the driver, and was seriously injured.
Defendant, Toye Brothers Yellow Cab Company, admits that plaintiff was a passenger, as alleged. It denies that she sustained injury, but does not dispute the happening of the accident. However, it resists liability in the case on the ground that the driver of the taxicab at all times exercised the highest degree of care, driving at a safe and reasonable speed, and always observant of all traffic regulations. It further avers that the sole and proximate cause of the accident was the reckless and careless act of its co-defendant, Edyburn, in having entered the intersection at an excessive rate of speed in the face of the red semaphore light, and heedless of traffic then proceeding on the green signal light along South Carrollton Avenue, and striking the front bumper of the taxicab, which, because of the emergency, had been brought to a sudden stop. Defendant, Toye Brothers Yellow Cab Company, further avers that its driver was a highly skillful and competent operator; that he was in no way negligent and that, consequently, no liability attaches.
It appears that Edyburn, charged as a joint tort-feasor, was not cited, and, in view of this circumstance, plaintiff elected to prosecute her demand against Toye Brothers Yellow Cab Company on the contract of carriage and not as an action in tort.
On this issue, the case was heard and the judge a quo found for the plaintiff and awarded damages in the sum of $1,500. From this judgment defendant, Toye Brothers Yellow Cab Company, has appealed.
It is well established that a carrier of passengers is not an insurer, but it is required to exercise the highest degree of care, vigilance and precaution for the safety of those it undertakes to transport and is liable for the slightest negligence. In truth, in many cases, the fact of injury to a passenger gives rise to the presumption that the carrier was negligent, "since, under ordinary conditions, with proper direction and control, taxicabs do not collide with other vehicles. Hamburger v. Katz et al., 10 La.App. [215] 217,120 So. 391." Dawson v. Toye Bros. Yellow Cab Co., Inc., et al., 15 La.App. 326, 131 So. 716.
This so-called highest degree of care imposed upon the carrier is said to be affected by the character of the conveyance, the usual course of its business, and the hazards growing out of particular situations. While it is unquestionably true that a passenger must take the risks incident to the mode of travel and the *Page 422 
character of the means of conveyance which he selects, such risks are only those which cannot be avoided by the carrier by the use of the utmost degree of care and skill in the preparation and management of the means of conveyance. See American Jurisprudence, Vol. 10, pp. 163, 171 and 172.
It is also well established in our jurisprudence that, where a passenger is injured in an accident and has failed to reach his destination in safety, the burden is on the carrier to prove itself free from fault, but it is not required to show how and why the passenger was injured in order to bar recovery. Cusimano v. New Orleans Public Service, Inc., 170 La. 95, 127 So. 376; Dillon v. New Orleans Public Service, Inc., La.App., 170 So. 406. To the same effect see Bynum v. City of Monroe, La.App., 171 So. 116; Wark v. New Orleans Public Service, Inc., La.App.,168 So. 797; Hughes v. Baton Rouge Electric Company, La.App., 188 So. 473.
In the use of public highways and streets, it must be conceded that, besides other risks which are attendant to that mode of travel, one of the greatest hazards is that of collision. Where such is the case, if the carrier is free from fault and the accident has been occasioned exclusively through the negligent act of a third party using the highway, then the carrier is not liable to its passengers who may be injured thereby. Gager v. Teche Transfer Company, La.App., 153 So. 69. In Gonzales v. Toye Brothers Yellow Cab Company, La.App., 198 So. 379, 381, involving an accident resulting from an emergency, we said:
"* * * where the cause is claimed to be a sudden emergency created entirely by some third person, the carrier is under the necessity, if it would absolve itself from liability, of showing that neither it nor any of its employees was in any way involved in the creation of the emergency and also that the operators of the vehicle in which the passenger was riding did all that they could (even though it was not the best thing) to prevent the accident."
Bearing these principles in mind, we now approach an investigation of the evidence submitted in this matter. After all, the law is simple and presents little difficulty, and, in applying it to the facts, each case must necessarily stand upon its own particular facts.
We do not find it necessary to analyze in detail the testimony of the large number of witnesses presented by the defendant for the reason that their explanations and versions of the accident are in substantial accord. The record discloses that, prior to reaching the intersection of South Claiborne and South Carrollton Avenues, plaintiff makes no attempt to show that the taxicab driver did not exercise due care and caution, or that he was driving other than at a reasonable rate of speed. According to the testimony of these witnesses, the following picture presents itself:
An upbound Tulane street car had come to a stop on South Carrollton Avenue at the intersection with South Claiborne Avenue, and had discharged passengers while the semaphore light was showing red for traffic on South Carrollton Avenue. On the roadway of South Carrollton Avenue, reserved for upbound vehicular traffic, defendant's cab was also brought to a stop at the South Claiborne Avenue intersection in obedience to the red semaphore light, its front in alignment with that of the stopped street car. At the same time a St. Charles street car, proceeding in a direction opposite to that of the other street car and defendant's taxicab, arrived at the other side of the intersection, where it also was stopped in obedience to the red signal light facing it, and there discharged passengers. Another vehicle, a truck, operated by Charlie Jackson and proceeding downtown, had also been stopped on Carrollton Avenue alongside of the St. Charles street car.
It is unquestionably shown that when the signal light facing traffic on South Carrollton Avenue turned from amber to green, the four mentioned vehicles started to enter the intersection. It is also shown that when the upbound Tulane Street car and taxicab had proceeded into the intersection for a distance of six to eight feet, a Plymouth sedan, operated by Edyburn, at an excessive rate of speed — estimated as between forty-five and sixty miles an hour — suddenly, and without any warning, and in titter disregard of the red signal light facing him, dashed across Carrollton Avenue in the direction of Jefferson Parish. It is shown that the motormen in charge of both street cars, the truck driver, and the chauffeur of the taxicab, confronted with this unforeseen emergency, brought their respective vehicles *Page 423 
to an immediate stop; that, had the Plymouth sedan continued straight on its course, it would have collided head-on with the front end of the Tulane street car. Sensing an impending crash and realizing that he could only avoid striking the street car by swerving to the left, Edyburn resorted to negotiating an arc around the front end of the street car. Because of the excessive speed of the Plymouth at the time it was suddenly swerved to avoid the street car, Edyburn lost control of his vehicle, and bounced over the car tracks, its right running board and rear fender striking the left side of the front bumper of the taxicab, which, then partially in the intersection, had been brought to a stop in a position facing slightly toward Jefferson Parish, a maneuver evidently resorted to by the cab driver in an effort to avoid being struck. Undoubtedly, any injuries suffered by plaintiff were occasioned by the sudden application of the taxicab's brakes in the face of the emergency. It is further shown that after striking the cab, the Edyburn car careened into a telephone pole, struck and instantly killed a woman standing on the neutral ground beyond the intersection, turned over and spun around on its top several times.
The testimony of James F. Rapp, Jr., seemingly plaintiff's chief witness, is by no means convincing. He testifies to being parked one block from the intersection on South Carrollton Avenue, endeavoring to start his automobile, after which, he states, the Yellow cab passed him traveling at a speed in excess of forty miles per hour, reached the intersection on the red traffic light, and proceeded across without stopping, when the light turned to amber. He testified further that, after striking the Edyburn car "broadsides" and causing Edyburn to lose control of his car, the cab continued its dash up South Carrollton Avenue without coming to a stop. His explanation of the accident is so completely at variance with the testimony of all the witnesses that we must confess ourselves amazed at what he states he observed. A reading of his testimony, however, convinces us not only that his explanation is rather incredible, but that it also apparently resulted from his confessed contempt for all yellow cab operators, a resentment sufficient in itself to lend suspicion to his truthfulness.
Joseph W. Fulco, another witness for plaintiff, unquestionably was not in a position to have seen what he says he actually saw and to have observed in such minute detail what he says he observed. He is shown to be a laborer, who, at that moment, was awaiting the arrival of a bus at the intersection, and it is further shown that he was a co-employee of Newberry, whose wife was killed by the Edyburn car.
The testimony of Dr. Preston F. Brock, another witness for plaintiff, is to the effect that, at the time of the accident, he was seated in his car, parked at a filling station at the downtown corner of the intersection, or where the Edyburn car entered it. His version is in substantial agreement with the other eye-witnesses to the occurrence.
In a large majority of cases involving collisions between vehicles, courts are invariably confronted with conflicting testimony. Witnesses are quite often swayed by sympathy or resentment, and in many cases their capacity to correctly visualize is subject to considerable variance. Quite often a witness is unable to clearly distinguish between what he actually saw and the conclusions subsequently reached by him. When confronted with the arduous task of eliciting facts from conflicting testimony, courts find a reliable guide in giving particular weight to testimony which is based on physical facts and acts of witnesses rather than on their mere observation.
With these recognized principles in mind, we are influenced in a large measure, aside from the testimony of the cab driver, by the striking and singular fact that the motormen of the two street cars and the truck driver, Charlie Jackson, all directly concerned with the circumstances leading to the accident, acted under a similar impulse and in a like manner, stopping their respective vehicles, as prudence and reason dictated. Being in the immediate dangerzone, their respective acts, first, in simultaneously entering the intersection, and, secondly, in abruptly coming to an emergency stop, as was the act of defendant's cab driver, are most persuasive evidence of the gross negligence of Edyburn, and as such the sole cause of the accident.
Applying the principles of law to the proven facts here, we find no actionable negligence in the driver of defendant's taxicab.
Plaintiff relies with complete confidence on the case of Thomas v. Roberts, decided by us and reported in 144 So. at page 70. *Page 424 
There, plaintiff's automobile, driven by his minor son, was struck by the defendant's truck at a street intersection. Plaintiff's son did not put his automobile in motion until the light facing him had completely changed to green. Yet, he did not look for the approach of any other vehicles in the roadway crossing his path and, had he done so, he would have seen the oncoming truck. The drivers of the other cars abreast of and to the left of plaintiff's car saw the oncoming truck of defendant and for that reason did not drive into the intersection. The truck entered into and was speeding across the intersection after the traffic light facing it had turned to red. The plaintiff brought suit for damages and the defense of contributory negligence was interposed. We held the defendant negligent in having entered the intersection in the face of the red traffic light and also in driving at an excessive speed. We also held that plaintiff's son was contributorily negligent, thereby preventing recovery, in that he was at fault in not looking for the approach of other vehicles and in presuming that no one else was acting in violation of a safety ordinance.
The facts in the case at bar, however, can be readily distinguished from those in the Roberts case. There we found that plaintiff's son did not look for the approach of any vehicles in the roadway crossing his path and that, had he done so, he would have seen the oncoming truck, remained in his position of safety, and avoided the collision. We found that others abreast of him had, by ordinary observation, seen the approach of the oncoming truck and had remained in their respective positions of safety. Had plaintiff's son done as the others abreast of him had done, or even had he cautiously entered the intersection, the accident would not have occurred. But, on the contrary, the facts disclosed — and we so concluded — that in the face of the oncoming truck, which could have been seen had he looked, plaintiff's son, in his desire to forge ahead and lead off the traffic parked abreast of him, proceeded up the avenue, in utter disregard of physical danger, which we concluded was the proximate cause of the collision.
Our holding in the Roberts case was reviewed in the Tulane Law Review (Volume 7, page 463), a journal for which we have profound respect. Their statement of our finding of fact is not wholly in accord with what we actually found and so discussed in our opinion. We did not intend to hold, and did not hold, that one was at fault in not looking for the approach of other vehicles where his view was obstructed, and therefore was contributorily negligent, for the facts as disclosed by the record clearly established that, had plaintiff's son exercised the ordinary means of observation, he could and would have seen the approaching truck and would not have thus ventured into the intersection.
In the case at bar the driver of defendant's cab came to a stop on reaching the intersection of South Claiborne and South Carrollton Avenues, in obedience to the red signal light facing him. At that moment he was stopped alongside of a Tulane street car, the front end of his cab abreast of the street car, the position of both vehicles being in compliance with traffic regulations. In that position the view of the cab driver to his left, or for traffic approaching along South Claiborne Avenue toward Jefferson Parish, was thus obstructed by the stopped street car. When the light turned green, in reliance thereon both the street car and cab started to enter the intersection. The motorman's vision to the left being unobstructed, he, on seeing the almost suicidal approach of the Edyburn car, immediately applied his emergency brake and came to a stop. The cab driver, on seeing the bouncing Edyburn car swerving around the front of the street car, likewise applied his emergency brake and came to a sudden stop. In the face of such circumstances, we are convinced that here was an emergency brought about by the reckless abandon of Edyburn in the operation of his automobile, the creation of which the cab driver was in no way involved. It is manifest that he did what any reasonable, prudent operator of a motor vehicle would have done under similar circumstances. It is also clear to us that, faced with the impending danger, brought about solely by a third person, in suddenly applying his brakes and bringing his cab to an immediate stop, he did what prudence dictated and the exigencies of the moment required, for, had he not done so, undoubtedly the consequences would have been of a more serious nature.
It is well established that there is no liability in a public carrier where the accident results from an emergency created entirely by causes for which the carrier is not responsible. In Upton v. Bell Cabs, *Page 425 
Inc., et al., La.App., 154 So. 359, 363, we said:
"There is also a rule of law that, if one is confronted with a sudden emergency which is not in any way brought about by his negligence, he is not liable even if it is subsequently shown that by acting differently under the circumstances the accident would have been avoided. Mitchell v. Ernesto et al., 153 So. 66, decided by this court March 12, 1934, and authorities cited therein."
Also see Gonzales v. Toye Brothers Yellow Cab Company, supra.
For the reasons assigned, it is ordered, adjudged and decreed that the judgment appealed from be and it is annulled, avoided and reversed, and that there now be judgment in favor of defendant, dismissing plaintiff's suit at her cost.
Reversed.