In this suit, plaintiff seeks to recover damages for loss of salary, dental expenses, medical expenses, permanent disfigurement, pain, suffering and mental anguish and loss of clothing amounting to the sum of $5234, allegedly sustained by him as a result of an accident when a taxicab of the defendant Joseph Henderson, driven by Leo Johnson, in which he was a paid passenger, ran into the rear of an automobile owned by the other defendant, Waldo Bernard, and driven by Albert Harris while in the course and scope of his employment, and allegedly caused by the joint and concurrent negligence of the drivers of both vehicles.
The charges of negligence against the driver of the taxicab consist in his travelling at an excessive speed in violation of the ordinance of the City of Baton Rouge, wherein the accident happened, in not maintaining a proper lookout, and in not having the said taxicab under proper control.
The charge of negligence against the driver of the other defendant, Waldo Bernard, is that the said car was parked in a stationary position some few spaces from the curb line and therefore parked illegally under the provisions of the ordinance of the City of Baton Rouge.
The defendant Henderson, in his answer, admitted the accident, but denied any charges of negligence to his driver, and also denied, from lack of information, that plaintiff was injured. In further answer, he sets forth that the proximate cause of the accident was the gross negligence of the driver of Bernard's car in backing in the middle of the street wherein the accident happened, in the night time, without lights, and at a dark place.
The defendant Bernard, in his answer, admitted the accident and made a general denial of all the plaintiff's allegations especially denying that Albert Harris, the driver of defendant's automobile was engaged, at the time of the accident, in rendering *Page 371 
services to said defendant, and that the said driver was acting within the scope of his employment and, on the contrary, alleging that Harris was driving the automobile without his consent and against his specific orders to do so.
There was judgment in favor of the plaintiff and against the defendants, in solido, in the sum of $1,734, plus interest and costs. Joseph Henderson appealed suspensively and Waldo Bernard appealed devolutively. Plaintiff has answered the appeals and prays for an increase to the amount originally demanded.
[1, 2] The rules of law applicable in this case to the defendant Henderson are now well settled and are correctly stated in the case of Oppenheim v. Toye Bros. Yellow Cab. Co., La. App. 7 So.2d 420, 421, as follows:
"It is well established that a carrier of passengers is not an insurer, but it is required to exercise the highest degree of care, vigilance and precaution for the safety of those it undertakes to transport and is liable for the slightest negligence. In truth, in many cases, the fact of injury to a passenger gives rise to the presumption that the carrier was negligent, 'since, under ordinary conditions, with proper direction and control, taxicabs do not collide with other vehicles. Hamburger v. Katz et al., 10 La. App. (215), 217,120 So. 391.' Dawson v. Toye Bros. Yellow Cab Co., Inc., et al., 15 La. App. 326, 131 So. 716. * * *
"It is also well established in our jurisprudence that, where a passenger is injured in an accident and has failed to reach his destination in safety, the burden is on the carrier to prove itself free from fault, but it is not required to show how and why the passenger was injured in order to bar recovery. Cusimano v. New Orleans Public Service, Inc., 170 La. 95,127 So. 376; Dillon v. New Orleans Public Service, Inc., La. App., 170 So. 406. To the same effect see Bynum v. City of Monroe, La. App., 171 So. 116; Wark v. New Orleans Public Service, Inc., La. App., 168 So. 797; Hughes v. Baton Rouge Electric Company, La. App., 188 So. 473."
On the night of October 15, 1942, at about ten o'clock P. M., plaintiff, in company with Freddie Green, engaged the services of a taxicab belonging to defendant Henderson, in the 13th block of Government Street, in the City of Baton Rouge, to be transported to a church on South Royal Street of the said city. The taxi driver turned left at South 13th and Government Streets and continued on South 13th Street in a southerly direction until the intersection of that street with South Boulevard, where there is a traffic light. The evidence is conflicting as to whether the light was "green" or "red." He then turned right into South Boulevard and continued thereon in a westerly direction until approximately the intersection of South Boulevard with South 12th Street leading north from South Boulevard, where he collided with the rear end of an automobile owned by defendant Bernard and in charge, at that time, of Albert Harris. It appears that South 12th Street does not directly intersect South Boulevard; it appears that at South Boulevard there are two dead ends. The end of South 12th Street leading in a southerly direction is about one hundred feet east of the end of South 12th Street leading in a northerly direction. On the southwest corner of South 12th Street leading in southerly direction, there is situated a service station known as Horatio's Service Station. Bernard's automobile had been pushed out of this station into and about the center of South Boulevard and about fifty feet from the cast intersection of South 12th Street and was headed in a westerly direction at the time of the accident. It appears that South Boulevard is fairly level from South 13th Street to the west end or intersection of South 12th Street. The prevailing weather condition was good and the street or pavement was dry.
The preponderance of the testimony is that the taxi driver was traveling at a speed of thirty-five miles an hour prior to the application of his brakes; the skid marks show that he skidded for 54 feet. He testified that he saw the Bernard automobile a block away, without lights; he states that he did not know then whether it was moving or not. According to his testimony, he did not do anything until he was about ten feet away from the car when he realized that the car was backing up rather than stationary or moving in a westerly direction, the direction in which he was travelling, when he immediately applied his brakes.
[3] The ordinance of the City of Baton Rouge establishes the maximum speed limit for all vehicles at twenty-five miles per hour. The violation of a speed ordinance does not, per se, constitute negligence, *Page 372 
unless the violation thereof is a proximate cause of the accident. In the present case it is one of the causes of the accident. The taxi skidded fifty-four feet before colliding with the car in front of it. If the car was moving backwards, as testified to by the taxi driver, then they were approaching each other, and yet it can be said, on account of the taxicab's speed, the driver was unable to stop it within 54 feet. The cab was equipped with good brakes. Furthermore, the taxi driver was not keeping a proper lookout and did not have his machine under proper control. He saw the car in the middle of the street, without lights, for a block, and did nothing until he was upon the car. Ordinarily, with proper direction and control, an automobile does not run into the rear of another one.
[4] A carrier of passengers is liable for the slightest negligence which contributes to an accident that causes injury to a passenger. Furthermore, if a passenger is injured, the burden is on the carrier to prove itself free from fault. In the instant case, not only has the carrier failed to prove itself free from fault, but the evidence justifies a conclusion that the taxi driver was guilty of negligence in two particulars, that is, fast driving and in not having the taxicab under proper direction and control, which was a proximate cause of the accident.
As to the defendant Waldo Bernard, the negligence of Albert Harris is tacitly admitted. In fact, in his brief, defendant relies altogether as a defense on his plea that. Albert Harris, the driver of his automobile was acting beyond the course and scope of his employment at the time of the accident and he was acting against the express command of the defendant in operating the automobile. We therefore see no useful purpose in discussing the negligence of the said Albert Harris.
The rule of law applicable to such a defense by a defendant is now well settled and is correctly stated in the case of G'Sell v. Cassagne, La. App., 12 So.2d 51, the syllabus of which reads as follows: "In action for injuries to passenger in automobile colliding with defendant's truck driven by his employee, presumption arose that employee was acting within the scope of his employment, and burden was on defendant to establish by convincing proof that employee was engaged on personal mission at time of accident, as defendant contended."
[5] Since defendant admits that the automobile belonged to him and that Harris, the driver of the same, was in his employment, a presumption arose that he was acting within the scope of his employment and the burden was upon the defendant to establish by convincing proof that he was actually engaged upon a personal mission at the time of the accident. See May v. Yellow Cab Co., Inc., 164 La. 920, 114 So. 836; Mancuso v. Hurwitz-Mintz Furniture Co., La. App., 181 So. 814; G'Sell v. Cassagne, La. App., 12 So.2d 51, 52. Has he borne that burden by convincing proof?
The defendant operates a restaurant, chicken and oyster loaves' business, located at 2401 North Boulevard, in the City of Baton Rouge and in connection therewith owns a bicycle and the automobile in question to deliver the chicken and oyster loaves to his customers. Harris was employed as a delivery boy and in such capacity drove said automobile in and around the city of Baton Rouge making delivery of chicken and oyster loaves in furtherance of said business. While so acting, Harris had complete control over the automobile and was given authority to purchase gasoline and oil from Horatio's Service Station.
Defendant's brother, Joe Bernard, operates a like business located at 1346 North Boulevard, some eleven blocks west of defendant's place of business.
According to defendant, on cross examination, on the night of the accident, at about the hour of 8:30, he had an order to be delivered in the seventh block of North Fifth Street, and he sent Harris, in the car, to deliver it, it being the only order received by him during that night and the only one Harris had to deliver. About fifteen minutes after Harris left with the order, his brother 'phoned him that Harris was at his brother's place of business complaining that the brakes of the car were not working. He spoke to Harris and told him to leave the car on his brother's lot until morning when they would fix it, and to come back and get the bicycle. His brother was to finish the delivering of the package. He had driven the car that evening and the brakes were in order; the brakes were of the hydraulic kind and could get out of commission quickly on account of lack of oil. He did not see or talk to Harris before 10:30 that night when Harris told him that he had visited the Horatio Service Station to get some fluid *Page 373 
put in the cylinder of the brakes. When Harris failed to return to his place of business, he rang up his brother to inquire if the car was still on the lot; and getting a negative answer, and that Harris had driven the car away, he telephoned the Horatio Station to inquire about the car and Harris; Harris had not yet arrived at the station. He never had the brakes fixed or attended to. He does not know if Horatio put oil in the cylinders or not. He had an account at Horatio's; Horatio would send him bills and he would pay them. On direct examination, he states that Horatio's station was the regular place where he bought the gas and oil for the car. He places the day of the accident on a Sunday night. Harris customarily went to Horatio's to get water, gas and oil. Before he turned the car over to Harris, the brakes were good.
Joe Bernard, defendant Waldo Bernard's brother, corroborates defendant Bernard's version of Harris' visit to his place and the complaint of the brakes not working. He states that he instructed Harris to leave the car on the lot and bring in the keys. He absented himself for half or three-quarters of an hour. When he returned the car was missing. He surmised that his brother had sent a mechanic for the car. He does not remember the day or month or year or season. He learned of the accident the following day. He states that Harris brought the car and parked it in the afternoon, in day time and not at night. It was late in the afternoon; when he came back to work at six o'clock the car was gone.
Jesse Hebert, the filling station attendant, testified that Harris drove the car to the station for lubricating oil and water, saying nothing and not requesting anything for the brakes nor complaining about the brakes. The car was hot and needed only lube oil and water.
The defendant Bernard failed to obtain the deposition or testimony of Albert Harris, the driver of his car, basing his failure to do so on the fact that at the time of the trial of the case Harris was in the armed service of the United States. The suit was filed on October 5, 1943, and the case tried on May 31, 1944. There is no evidence as to when Harris was inducted into the services. It appears to us that he had ample time and opportunity to obtain the deposition of Harris by interrogatories or by being present and examined, either in or out of Court, by the attorneys, in that Harris visited the City of Baton Rouge for three days.
It appears to us that the testimony of defendant Bernard and that of his brother Joe Bertrand are in conflict and irreconcilable, unsatisfactory and discredit each other. Defendant definitely states that the accident took place on a Sunday night when the evidence is conclusive that it was on a Thursday night. Joe Bernard is positive that the car was brought and left on his lot in the late afternoon and removed by Harris prior to six o'clock P. M., of that day. Defendant fixes the time as being around 9:00 P. M. Both would want us to believe that Harris was instructed to leave and did leave the car on Joe Bernard's lot, thus depriving defendant Bernard of the only automobile in the delivery of packages. The district judge, after seeing and hearing these witnesses and observing the manner in which their testimony was given, evidently did not believe them. Neither do we.
A fact which strongly shows that Harris was, at the time of the accident, within the course and scope of his employment is that we find him at Horatio's Service Station, a place admitted by defendant Bernard to be the place he regularly serviced his car, obtaining therefrom service in the nature of lube oil and water. Furthermore, there is no other evidence in the record to show that the brakes were inspected after the wreck and found to be in a bad condition. Defendant Bernard admits that he did not have them inspected regardless of the fact he was informed that they were supposed to be in such a bad condition so as to warrant the storing of the car for the remainder of the night.
[6] We are therefore of the conclusion that the defendant Bernard has failed to establish by convincing proof that Harris was not acting within the scope and course of his employment at the time of the accident, the burden of which rested upon him, and is therefore liable in solido with defendant Henderson.
[7] As to the quantum, we find that the plaintiff has proven the following items of damages — and in fact they are not disputed: Dental services, loss of clothes, loss of earnings and medical service, all to the amount of $234. The trial judge allowed $1500 for physical injuries, pain and suffering. Plaintiff contends, in answer to the *Page 374 
appeal, that this is inadequate, while defendant Henderson contends that it is excessive. Plaintiff suffered the loss of four upper and four lower front teeth. These teeth were replaced by bridges. There is no disfigurement. He suffered pain and mental anguish for a while. The award of the trial judge is not excessive nor inadequate. For these reasons, the judgment appealed from is affirmed.