GLADNEY, Judge.
Lellie Mae Pero has appealed from a judgment rejecting her demands for alleged personal injuries received while a passenger on a trolley operated by Shreveport Railways Company, Inc.
Appellant alleges that on March S, 1953, while riding on one of defendant’s trolleys and having paid her fare, the driver of the trolley suddenly and in a violent manner jammed on his brakes, causing the trolley to swerve and petitioner to be thrown on the floor, which fall resulted in injuries to her head, shoulders, back and finger of the right hand. The answer of appellee admits plaintiff was a passenger at the time alleged on one of its trolleys traveling north, inbound, on Line Avenue, and that after stopping at Merrick Street to pick up two passengers the trolley had moved away when the operator was suddenly and without warning confronted with an automobile making a left turn directly in front of said trolley, an emergency requiring instant use of his brakes. It is denied that plaintiff suffered any injuries as a result of the sudden stoppage of the trolley. The trial judge, in written reasons for judgment, stated his *67 findings justified application of the sudden emergency doctrine and consequently he resolved the case in favor of defendant.
The standard of care owed by a common carrier to a paying passenger is well settled in our jurisprudence. Where such a passenger is not carried safely to his or her destination by the common carrier, a prima facie case of negligence is established against the carrier when the passenger shows injury, after which the carrier has the duty to prove its freedom from negligence to overcome the passenger’s prima facie case. See Gonzales v. Toye Bros. Yellow Cab Company, La.App.1940, 198 So. 379; Anderson v. City of Monroe, La.App.1941, 2 So.2d 499; Valdry v. Baton Rouge Bus Company, Inc., La.App.1941, 5 So.2d 173; Oppenheim v. Toye Bros. Yellow Cab Company, La.App.1942, 7 So.2d 420, affirmed, 1943, 203 La. 1067, 14 So.2d 854; Pierce v. Toye Bros. Yellow Cab Company, La.App.1942, 8 So.2d 562, affirmed La.App., 11 So.2d 236; Bailey v. Owen, La.App.1944, 19 So.2d 299; Murphy v. Henderson, La.App.1945, 23 So.2d 369; Jakubec v. Southern Bus Lines, Inc., La.App.1947, 31 So.2d 282; Etress v. Shreve port Rys. Co., Inc., La.App.1948, 33 So.2d 700; Kendall v. New Orleans Public Service, Inc., La.App.1950, 45 So.2d 541; Johnson v. Shreveport Rys. Co., La.App.1951, 50 So.2d 655.
Although a passenger assumes the risk “incident to the mode of travel” adopted, such risks are only those which cannot be avoided by the carrier by the use of the utmost degree of care and skill in the management of the conveyance. See Matteson v. Teche Greyhound Lines, La. App.1938, 178 So. 272, 273; Oppenheim v. Toye Bros. Yellow Cab Company, La.App.1942, 7 So.2d 420, affirmed 203 La. 1067, 14 So.2d 854.
The standard of care required of the carrier is qualified only by a reciprocal duty of passengers not to contribute to such injury by any want of ordinary care. See Nee v. New Orleans Public Service, Inc., 1929, 11 La.App. 1, 123 So. 135; Baker v. Shreveport Rys. Company, Inc., La.App. 1953, 68 So.2d 228.
Lellie Mae Pero, aged about fifty-seven years, testified that upon the occasion alleged she was riding on the long side seat in the rear of the trolley which had passed Byrd High School proceeding north toward the business section of Shreveport, and the trolley was traveling at a “pretty fast” speed when it swerved and threw her out of her seat. She said her head hit an upright rod and her neck caught up under the side of the seat; that she fell on her knee which kept her from going all the way to the floor; that her head, hand and arm were hurt, and the doctor placed her finger in a cast which caused her to be out of employment for a period of ten weeks, in which work she was earning $26 or $27 per week. She said she promptly complained to the operator and later made a report to Oscar Alexander, the claim investigator for appellee. In the written report of the accident by Lellie Mae Pero, given to Alexander at that time, she stated the accident occurred about 3:30 o’clock P.M. when the bus was moving at a normal speed and made a quick stop, and wrote:
“I boarded trolley No. 313 at Line and Delaware Street, headed toward town. After the trolley passed Byrd High School a little ways it made a sudden stop. Someone said a woman in an auto ran in front of the trolley causing the trolley to make a quick stop. I fell forward, the left side of my head struck a post. I fell against another woman who was seated next to me. I didn’t fall to the floor. It hurt my head. That is the only injuries I got. A white lady up front was thrown out of her seat. A white man picked her up. I didn’t see the car that ran in front of the trolley.” In her behalf plaintiff called to the witness stand Daisy Smith, who testified that she was a passenger on the same trolley seated on the second seat from the back on the right side and behind Lellie Mae Pero, who she said was thrown out of the seat by the sudden stop. She testified further that just before this happened, she saw an automobile driven by a lady suddenly turn in front of the trolley without putting *68 her hand out and it came so close to the front of the trolley the operator was forced to apply his brakes quickly to avoid a collision. She said she was not very familiar with the names of the streets along' the trolley route but thought the stoppage of the trolley occurred near Columbia Street.
The testimony of Daisy Smith as to the emergency stop, except as to location, is consistent with that of the operator of the trolley, George P. Rawls, and passengers Maude B. Polman and J. C. Swain. These three witnesses testified the trolley stopped at Merrick Street to pick up two women passengers and that these had entered the trolley, paid their fare, and were on their way to their seats when the brakes were suddenly applied and the trolley made a sudden stop. Mrs. Polman and J. C. Swain testified that a woman driving an automobile suddenly drove in front of the bus without warning or signal and so close thereto that if the operator had not immediately applied his brakes a serious accident would have occurred. Substantially identical testimony was given by George P. Rawls, the operator. All three of these witnesses testified there was no occurrence of note at Columbia Street and that the sudden stop happened just after pulling away from Merrick Street.
If we accept as correct the statements of Lellie Mae Pero and Daisy Smith, it would appear that the sudden stop which caused plaintiff to be thrown from her seat happened near Columbia Street on Line Avenue which is some distance from Line Avenue and Merrick Street, near which Rawls, Mrs. Polman and J. C. Swain testified was the locus of the sudden stop. We observe, however, that both Lellie Mae Pero and Daisy Smith admit their unfamiliarity with the names of some of the streets intersecting Line Avenue, and thus it is likely these witnesses were mistaken in placing the stop at Columbia Street. Daisy Smith was the only witness who recognized Lellie Mae Pero as being a passenger on the trolley. The testimony of Daisy Smith corroborates in many details the statements of the other witnesses as to the creation of an emergency by the driver of the automobile which suddenly turned left in front of the trolley, and because of this similarity there can be little doubt the sudden stop occurred near Merrick Street.
We have no difficulty in reaching the conclusion that the operator of the trolley was actually confronted with a sudden emergency which was brought about by no fault of his own. J. C. Swain, a police officer assigned to traffic regulation, and a member of the force for twenty-five years, was seated just behind the driver. He gave the following testimony, which, in our opinion, is sufficient to absolve the operator from any negligence:
“Q. What did he do as he approached Merrick Street? A. He stopped to pick up a couple of passengers.
“Q. Were they white or colored? A. White.
“Q. What happened when those two passengers got on the trolley, Mr. Swain? A. Well, when they got on, he shut the door and collected his fare and started on and all of a sudden an automobile that was evidently parked over there dived right in front of him and he missed about that far, Judge; (Indicating) I can tell you now.
“Q. How far did you say he missed it? A. About that far, (indicating). I would say not over a foot at the most. Of course, I could be mistaken, but it was a close rub, I promise you.
“Q. At what rate of speed did Mr. Rawls move off with the trolley after he had picked up these two passengers ? A. It couldn’t be too fast, Judge, because after you stop, you’ve got to start before you can pick up much speed.
“Q. He had just started off and gone from the trolley stop into the Merrick Street Intersection? A. Yes, sir.
“Q. Where was this automobile when you first saw it, Mr. Swain? A. Headed towards that trolley. It evidently had been parked there from *69 the way it come out, crossed in front of that doctor’s office there, just before you get to Merrick on Line, going out, and it was headed right towards us, and I thought to myself and in fact I did tell Rawls ‘Watch out for a head-on’ and all of a sudden he stopped that car. I don’t know how he could have stopped it so quick, but he did do it, and I figure that he saved tearing the car up or getting somebody maybe hurt on the street car.
“Q. Now, he was forced to make an emergency stop ? A. He sure was, Judge.
“Q. Was there anything else Mr. Rawls could have done to have avoided that collision? A. I don’t know of anything. He couldn’t turn to the right because of the distance and it would have been a head-on collision. If he had turned to the left why it still would have been. I don’t know anything he could have done except stop that car.”
The foregoing statement is in accord with the testimony of Mrs. Polman, Daisy Smith and George P. Rawls. We cannot find any evidence in the record which indicates fault on the part of the operator of the 'trolley.
Although our findings above would seem to be sufficient for a decision, we have carefully examined the testimony of plaintiff and the medical evidence as to her injuries, and are in considerable doubt that appellant has satisfactorily proven the injuries alleged. At the time of trial her principal complaint was a fracture of the little finger of the right hand which apparently was kept in splints for several weeks. X-rays made of the finger on March 6th, 25th and May 20th were the subject of interpretation by Dr. S. W. Boyce and Dr. W. R. Harwell. Their findings were absolutely contradictory. Dr. Harwell testified that in not one of the X-rays was there any suggestion of a fracture. Mr. Alexander testified that at the time of Lellie Mae Pero’s report to him there were no bruises on her head. Dr. Boyce testified plaintiff suffered what he termed a “whiplash” injury to the neck, which may have aggravated a chronic arthritic condition of the neck. Apparently, the only serious complaint plaintiff had was in connection with her finger injury concerning which the only medical evidence adduced upon trial is in serious conflict and cannot be considered satisfactorily proven. It is, therefore, our opinion that plaintiff has failed to establish to a legal certainty her alleged injuries.
For the foregoing reasons we conclude the appellee, Shreveport Railways Company, Inc., has properly established its defense predicated on the sudden emergency doctrine. The evidence is convincing that the operator of the trolley was confronted with a sudden emergency created entirely by an unidentified motorist which required him to make a sudden stop in order to avoid a serious collision with an automobile, and there is no evidence to indicate any negligence or fault in the operation of the trolley. We find also that plaintiff failed to establish by legally sufficient evidence her alleged injuries. The judgment from which appealed, therefore, will be affirmed.