GLADNEY, Judge.
Mrs. Anita Pearce Shannon, plaintiff herein, seeks compensation for personal injuries she received while riding defendant’s trolley bus as a paying passenger. Her husband, George W. Shannon, seeks to recover for his wife’s loss of earnings and medical expenses necessitated by her injuries. The district court rendered judgment in favor of both plaintiffs, for Anita Pearce Shannon in the amount of $10,000.00 and for her husband in the amount of $2,-463.70. From this judgment defendant appeals. Mrs. Shannon answered the appeal and prayed that damages to her be increased to the sum of $30,000.00.
On the morning of February 17, 1959, Mrs. Shannon boarded defendant’s trolley as a fare paying passenger, and seated herself on the side seat directly behind the driver. The trolley was driven by a student driver, Erven E. Nix, supervised by William H. Duncan, a regular driver, who was seated on the side seat opposite Mrs. Shannon. The incident which resulted in plaintiff’s injury occurred at the intersection of Marshall, a four-lane thoroughfare, and Crockett,, a one-way street for traffic proceeding in a westerly direction. Traffic at the intersection was directed by an officer of the city police force at the time.
The trolley proceeded north on Marshall and was brought to a stop in the right lane at this intersection some five or six feet behind the first vehicle in that lane, an automobile operated by an unknown driver. The police officer signaled for the northbound traffic on Marshall to cross the intersection. The automobile moved forward into the intersection and was followed by the trolley. The car traveled ten to fifteen feet and came to an abrupt stop. The action of the driver of the automobile in stopping his vehicle *208 apparently resulted from a misunderstanding of a signal given by the traffic policeman.
The trolley driver, Nix, was watching the preceding automobile and upon seeing it, suddenly coming to a stop, he immediately applied the brakes of the trolley and brought it to a stop some three to five feet behind the automobile. Nix estimated that the automobile moved ten to fifteen feet into the intersection before it came to a sudden stop, and testified the trolley moved ten to twelve feet before it stopped three to five feet behind the automobile. Duncan testified the car was about six feet from the trolley when it began to move into the intersection, that it had traveled from ten to fifteen feet before stopping, and that the car and bus were approximately three feet apart when they stopped in the intersection.
The sudden stopping of the bus caused plaintiff to slide across her seat and fall against the metal bars immediately behind the driver, thereby causing the injuries of which she complains. Mrs. Shannon remained in the trolley and was driven, at her request, to the Shreveport Journal Building where her husband was employed. She was then removed to an ambulance and carried to a local hospital.
Plaintiffs alleged Mrs. Shannon’s injuries were proximately caused by the negligence of the trolley operator in failing to keep a proper lookout, in failing to gradually apply the brakes so as to avoid a sudden and abrupt stop, in following the automobile too closely, and in traveling at an excessive speed under the circumstances so as to occasion a sudden and abrupt stop.
Appellant assigns error of the trial court in that it failed to hold that the accident resulted from an emergency neither caused nor contributed to by defendant; it failed to hold the behavior of the trolley operator in reacting to the emergency constituted due care under the circumstances; and the awards to plaintiffs were excessive under the evidence and the jurisprudence.
The general law relating to the liability of a public carrier for injuries to a passenger caused by a sudden stopping, starting or lurching movement of the conveyance, is summarized in Baker et ux. v. Shreveport Rys. Co., Inc., La.App., 68 So. 2d 228, 230, 231 (2d Cir. 1953):
“Where a passenger is not carried safely to his or her destination by the common carrier, a prima facie case of negligence is established against the carrier when the passenger shows injury while a paying passenger thereon, after which the carrier has the duty to prove its freedom from negligence to overcome the passenger’s prima facie case.
=1= * * * * *
“The sudden emergency doctrine is applicable to common carriers of passengers for hire. When confronted with a sudden emergency arising from no fault or negligence of the common carrier, it will not be held liable for the damages that follow, even though it may be shown that if the one responsible had acted differently the accident would not have taken place.
iK % íJj 9ft ‡
“Although a passenger assumes the risk ‘incident to the mode of travel’ adopted, such risks are only those which cannot be avoided by the carrier by the use of the utmost degree of care and skill in the management of the conveyance. See Matteson v. Teche Greyhound Lines, La.App.1938, 178 So. 272, 273; Oppenheim v. Toye Bros. Yellow Cab Co., La.App.1942, 7 So.2d 420, affirmed 203 La. 1067, 14 So.2d 854.
“The standard of care required of the carrier is qualified only by a reciprocal duty of passengers not to contribute to such injury by anjr want of ordinary care. Nee v. New Orleans Public Service, Inc., 11 La.App. 1, 123 So. 135.”
*209 Although a public carrier owes the highest degree of care to its passengers, it is not the insurer of their safety. Baptiste v. New Orleans Public Service, Inc., La.App., 161 So. 783 (Orl.1935); Rauscholb, et al. v. Continental Southern Lines, Inc., La.App., 81 So.2d 87 (2d Cir. 1955). In Oppenheim v. Toye Bros. Yellow Cab Company et al., La.App., 7 So.2d 420, 421 (Orl.1942) the court defined the degree of care imposed upon the carrier:
“This so-called highest degree of care imposed upon the carrier is said to be affected by the character of the conveyance, the usual course of its business, and the hazards growing out of particular situations. While it is unquestionably true that a passenger must take the risks incident to the mode of travel and the character of the means of conveyance which he selects, such risks are only those which cannot be avoided by the carrier by the use of the utmost degree of care and skill in the preparation and management of the means of conveyance. See American Jurisprudence, Vol. 10, pp. 163, 171 and 172.”
It has been observed that the operator of a public carrier conveyance is not charged with the necessity of possessing superhuman powers in anticipating or of exercising such powers in a threatened emergency. Gonzales v. Toye Bros. Yellow Cab Company, La.App., 198 So. 379 (Orl.1940).
Counsel for appellee contends the sudden emergency would never have arisen if the trolley driver had not been following the automobile too closely, and that it was the driver’s duty to follow it at a distance which would permit gradual and easy stop so as to avoid endangering the safety of the passengers. Cited as supporting authority are Stevens v. Yellow Cab Company, Inc., La.App., 142 So. 807 (Orl.1932); Crawley v. City of Monroe et al., La.App., 26 So.2d 493 (2d Cir. 1946); Hopper v. Shreveport Rys. Company, La.App., 51 So.2d 845 (2d Cir. 1951), and Cavalier v. Nola Cabs, Inc., La.App., 96 So.2d 102 (Orl.1957). We find the cited cases were predicated upon facts materially different from those presented herein and are inapposite to the instant case. Thus, in Stevens v. Yellow Cab Company, Inc., supra, the court reached the conclusion that had the cab driver been alert he would have observed the other car turning into the lane ahead of him and he would not have followed it so closely that a sudden stop by it would have created an emergency. Cavalier v. Nola Cabs, Inc., supra, presents a case wherein the excessive speed of the taxicab was a decisive factor. In Hopper v. Shreveport Rys. Company, this court held that the driver of the trolley bus could have avoided the collision by taking the available means of avoiding contact with the other vehicle by swerving the bus. In the instant case, at the time the trolley was brought to a quick stop by Nix, it was moving at a rate of speed of not more than one or two miles per hour and covered a distance of only about ten or twelve feet. At the time of the occurrence traffic was heavy, which required vehicles, whether stopped or traveling, to operate close together. Nix succeeded in bringing the trolley bus to a stop a few feet from the preceding car. Through his diligence he was enabled to avoid a collision which he was bound to avoid if at all possible. Cf. Dykes et ux. v. Lowrance et al., La.App., 146 So.2d 171 (3rd Cir.1962). In Le Beau v. Baton Rouge Bus Company, Inc., La.App., 136 So.2d 740, 744 (1st Cir. 1961), the court held that a bus driver was free from negligence in making a sudden emergency stop to avoid collision with an automobile which ran a red light, saying:
“There is no legal duty upon the bus operator to anticipate or assume that motorists are going to violate a red light, or that an emergency will be created at every intersection. It is well-settled in our law by the jurisprudence that a motorist, including a bus operator, approaching and entering an intersection controlled by a traffic signal or a stop sign, is entitled to assume that *210 the signals will be understood and obeyed, and is not required to anticipate that other motorists will violate the law.”
The dissenting opinion in Kientz v. Charles Dennery, Inc., La.App., 17 So.2d 506, 513, (Orl.1944) contains a passage often quoted in our jurisprudence, and a reminder of the reciprocal obligations of drivers of motor vehicles:
“We are living in an advanced stage of the motor age. Heavy and congested vehicular traffic on the streets and highways is a daily rule rather than an exception. In these circumstances, it is vital to the public interest that the traffic rules and regulations be adhered to strictly (particularly with reference to the traffic semaphore system) as the motorist is, to a large extent, compelled to operate his car in the belief that the law will be obeyed by others. # * * ,}
This court recognized in Johnson v. Shreveport Transit Company, Inc., et al., La.App., 137 So.2d 463 (2d Cir.1962) that where the cause of the accident was due to a sudden emergency created entirely by some third person, the carrier may exonerate itself from liability by proving that the operator of its vehicle in which the passenger was riding, did all that he could (even though it was not the best thing) to prevent the accident. See also Teche Lines, Inc. v. Gorum et al., 202 La. 993, 13 So.2d 291, 293 (1943).
Although it is admitted the trolley came to a quick and sudden stop, it is our appreciation of the evidence that the stop was not extraordinarily so for the trolley had just started up and had proceeded hardly more than ten or twelve feet. We hold that the action of the operator was reasonable and prudent under the circumstances. Had he not been alert the trolley would have struck the car ahead and greater damage would probably have resulted. Counsel for appellee has argued it was negligence for Nix not to observe the signal given by the policeman which caused the automobile ahead to come to a sudden stop and thereby required a similar stop by the trolley. Nix testified he was observing the movement of the car preceding him and we believe that this was all that was required of him.
Accordingly, we have concluded that plaintiffs have failed to establish any actionable negligence on the part of the operator of the defendant trolley. The judgment from which appealed is annulled, reversed and set aside, and plaintiffs’ demands are rejected at their cost.