YARRUT, Judge.
This appeal is by substituted Plaintiff, Roque Marcade, from a judgment of the District Court in favor of Defendants, the latter being the owner of the taxicab and its driver, respectively, involved in a highway accident with Plaintiff.
The suit was filed November 21, 1957, by the widowed mother of Plaintiff, individually and on behalf of her son, then only 14 years old. On June 27, 1963, Plaintiff’s mother filed a supplemental petition substituting him, then a major, as sole Plaintiff, following which the son prosecuted the suit in his own behalf.
Plaintiff seeks recovery of $54,501.02 damages suffered by him for personal injuries, loss of earnings and medical bills, resulting from a collision between a taxicab of Defendant, Toye Bros., driven by Defendant Jones, and a motor scooter, driven by him, under the following circumstances:
On November 22, 1956 about 3:40 P.M., in New Orleans, a Toye Bros. Yellow Cab was traveling on Marconi Drive in the direction of the Mississippi River. Several car-lengths behind the cab was an automobile operated by Dr. Edmond Souchon, a prominent physician who testified for Defendants. Both vehicles were in the left-hand, or inside, lane on Marconi, headed toward the river. In this area Marconi Drive has four lanes for traffic, two heading toward, and two away from, the river. Ahead, and to the right, of the cab was a motor scooter operated by Plaintiff, then 14 years old, with a passenger. As the three vehicles headed down Marconi, Plaintiff (on his motor scooter) decided to make a U-turn to the left and, in doing so, cut in front of the Yellow Cab, resulting in a collision between the two vehicles.
Plaintiff charges the cab driver with negligence in operating his taxicab at an excessive rate of speed; failing to maintain a proper and adequate lookout; failing to observe that he was approaching a vehicle; and failing to have the said taxicab under *852 proper control. In the alternative, Plaintiff pleaded the cab driver had the last clear chance to avoid the collision.
Defendants deny all of these allegations and, in the alternative, charge Plaintiff’s son with contributory negligence in suddenly, and without any warning or signal, whatever, swerving from the right to the left side of Marconi Drive for a sharp left and ultimate U-turn, in front of said taxicab then only a few feet away, and at a moment when it was impossible for the cab driver to avoid striking said motor scooter; in failing to maintain a proper lookout; in failing to have his motor scooter under proper control; and in making a sudden U-turn in front of said taxicab between intersections.
There were two versions of the accident. Plaintiff and his passenger testified that, prior to the collision, they gradually veered from the right-hand side of Marconi to the middle, slowing down in preparation for making a left U-turn. Dr. Souchon testified that the boys started their turn directly from the right-hand side and made a violent turn to the left. Defendant, taxi driver, passed away before the trial, hence, could not testify.
Let Plaintiff tell in his own words just what he did and why he decided to make a left U-turn in the middle of the roadway, between intersections, as disclosed by the following cross-examination:
“Q. Now I think you said, on direct examination, that the last time you looked back over your left shoulder, before starting your turn, you said no cars were behind you, is that right ?
“A. Yes, sir.
“Q. And you saw no cars for a distance of two and a half blocks, is that right, back to where Heclcer was stopped?
“A. Sir, that is approximately. Yes, sir, I don’t know how many blocks.”
*** ** *
“Q. You had just put a new motor into your motor bike, which Hecker was riding, right?,
“A. Yes, sir.
“Q. So you figured he had trouble starting it?
“A. May I ask a question? You say new motor ?.
“Q You had done something to the motor; you had ground some valves or put in some new rings ?
"A. Yes, sir.
“Q. Now when you saw him stopped and you saw no traffic coming either way, you were still on the righthand side of the road?
“A. Right.
“Q. And you decided to make a U-turn and go back?,
“A. Yes, sir.
“Q. There was no traffic coming either way, as far as you knew, to prevent you from starting the U-turn there, was there?
“A. Traffic wasn’t the deciding factor.
“Q. O.K. There was no traffic that you know of? There were no automobiles that you knew of that would prevent you from starting a U-turn there, was there?
“A. No, sir.”
A witness for Plaintiff testified that the stop-light on the motor scooter worked after the accident. The stop-light was on back of the motor scooter and was not damaged. These two circumstances indicate that the motor scooter was hit from the side. If the motor scooter had been in the position claimed by Plaintiff, that is, at only a slight angle from the center line, the scooter would have been hit from the rear and not from the side, clearly showing *853 that, when the impact occurred, the motor scooter was nearly halfway through its turn and was hit from the side and not, as contended, hit in the rear.
The Louisiana Motor Vehicle Statute, LSA-Revised Statutes, Section 32:104(A), provides:
“No person shall turn a vehicle at an intersection unless the vehicle is in proper position upon the roadway as required in R.S. 32:101, or turn a vehicle to enter a private road or driveway, or otherwise turn a vehicle from a direct course or move right or left upon a roadway unless and until such movement can be made with reasonable safety.”
Plaintiff was bound to ascertain, before attempting his U-turn, that there was no traffic in either direction which could reach the point before he completed his U-turn. His failure to see the cab following him, and his failure to yield the right-of-way, constitute negligence proximately causing the accident. U. S. Fidelity & Guaranty Co. v. Bergeron, 148 So.2d 162 (La.App.1962); Dunnington v. Richard, 81 So.2d 33 (La.App. 1-1955); Audubon Ins. Co. v. Levy, 73 So.2d 37 (La.App.Orl.1954).
In reasons for judgment for Defendants at the conclusion of the testimony, the District Court, inter alia, said:
«* * *
“Hecker’s testimony amounts to nothing because he said he never saw the accident. So far as the accident is concerned, both the plaintiff and the boy riding with him on this motor bike, which was in the accident with the Yellow Cab, on Marconi Drive near City Park, in the vicinity of the swimming pool, between Victory Drive and Dreyfous, both testified that they were driving on the right-hand side of Marconi Drive at a speed not in excess of 25 miles per hour. * * * The plaintiff testified he looked back over his left shoulder and saw nothing coming; that he held out his hand for a left turn and gradually decelerated his motor bike and went up to the center line in order to make a left turn when he was hit by a taxicab.
"The testimony of his supporting witness, Abadie, is about the same. It is mentioned in this opinion that the cab driver is dead.
“One other factual witness who testified of any significance was Dr. Sou-chon. That is, Dr. Edmond Souchon who just left the witness stand. He happened to be driving on Marconi Drive at the time.
“The plaintiff says he looked and saw no traffic for two blocks, a block and a half.”
ti % }jt
“Be that as it may, there is no question in the mind of this Court that this plaintiff was negligent in this matter; that he turned when the taxi was there. If he did not see it, he should have seen it, and he is presumed, under law, to see that which he should have seen, and accordingly, the case will be dismissed at the plaintiff’s cost.”
In argument before this Court counsel for Plaintiffs-Appellants concede the driver of the motor scooter was guilty of negligence in attempting the U-turn as he did, and rested his case on the alternative plea of “the last-clear-chance doctrine,” contending that the cab driver had the last clear chance to avoid the collision. In support of his plea that the taxicab had the last clear chance and should have avoided the collision, Plaintiff’s counsel admitted the taxicab was traveling at the lawful speed of only 29 miles an hour, at which speed he contends the taxicab could easily have avoided the collision, notwithstanding Plaintiff’s sudden turn across its path.
Regarding Plaintiff’s “last-clear-chance” plea, the jurisprudence is clear that where, *854 in a sudden emergency, not created by him, a driver of a vehicle takes the wrong course and fails to avoid an accident, he cannot be held guilty of contributory negligence. Here the taxicab driver applied his brakes immediately upon seeing the danger. Oppenheim v. Toye Bros. Yellow Cab Co., La.App., 7 So.2d 420; 203 La. 1067, 14 So.2d 854; Shannon v. Shreveport Transit Company, La.App., 149 So.2d 206, writs refused, 244 La. 152, 150 So.2d 770; Johnson v. Shreveport Transit Company, La.App., 137 So.2d 463.
After a careful reading of the record, we cannot find that the District Court committed any error in its findings of fact and conclusions of law.
For the reasons assigned, the judgment of the District Court is affirmed; Plaintiff to pay all costs taxable against him, notwithstanding he was permitted to sue in forma pauperis. LSA-C.C.P. art. 5188; Mayer v. Frank J. Reyes & Co., La.App., 138 So.2d 642.
Affirmed.