90 So.2d 482 (1956)
Mrs. Geneva C. CURRIE, Plaintiff-Appellee,
v.
GOVERNMENT EMPLOYEES INSURANCE COMPANY et al., Defendants-Appellants.
No. 8556.
Court of Appeal of Louisiana, Second Circuit.
October 25, 1956.
Rehearing Denied November 29, 1956.
*483 Lunn, Irion, Switzer, Trichel & Johnson, Shreveport, for appellant Aetna Casualty & Surety Co.
Browne, Browne & Bodenheimer, Shreveport, for appellant Government Employees Ins. Co.
Simon & Carroll, Shreveport, for appellee.
GLADNEY, Judge.
This action is in tort for damages and was instituted by Mrs. Geneva C. Currie against the public liability insurance carriers of two automobiles involved in an intersectional collision. The plaintiff herein, Mrs. Geneva C. Currie, at the time of the accident was riding on the front seat in a Ford automobile driven by her husband, Arthur L. Currie, which vehicle was insured by the Aetna Casualty and Surety Company. The collision also involved a Chevrolet automobile driven by James L. Ruggiero and insured by the Government Employees Insurance Company. Plaintiff sustained serious injuries for which she received a jury verdict of $14,000. The defendants have appealed from the judgment.
On January 7, 1955, shortly after 8:00 o'clock P.M., at which time the atmospheric conditions were normal, Arthur L. Currie was driving south along McNeil Street in the City of Shreveport and became involved *484 in a collision with the Chevrolet car driven by James L. Ruggiero, the point of impact being approximately twenty-three feet south of the north line of Crockett Street and approximately thirteen feet west of the east side of McNeil Street. McNeil Street is thirty-six feet in width and is a one-way street with traffic proceeding in a southerly direction. Crockett Street is likewise a one-way street for traffic moving westerly. It has a width of forty-six feet. The intersection is subject to the control of traffic signal lights placed at each of the four corners of the intersection. These lights were functioning in proper order at the time of the collision.
The plaintiff alleged she was a guest in the Ford car and charges her husband, Arthur L. Currie and James L. Ruggiero with negligence in that each of them failed to maintain a proper lookout, that each entered the intersection at a time when it was unsafe to do so, and that each failed to take proper steps to avoid a collision. Additionally, she charged that Ruggiero was proceeding at an excessive rate of speed. Following a disposal of preliminary exceptions, the defendants answered, each charging the other's insured with specific acts of negligence and each asserting that Mrs. Currie was guilty of contributory negligence. The Aetna Casualty and Surety Company averred that Ruggiero was negligent in several particulars: in operating his vehicle at an illegal and excessive rate of speed, in not maintaining a proper lookout, in driving through a red signal light, and in attempting to cross said intersection after it had been preempted by the Ford automobile at a time when it was unsafe to do so. Identical allegations of fault were made against Arthur L. Currie by Ruggiero's insurer.
The facts upon which responsibility for plaintiff's injuries can be fixed, must be determined from the testimony of Mrs. Currie, her husband and James L. Ruggiero, who were the only eye witnesses to the occurrence, and the inferences from physical evidence found at the scene of the accident.
Ruggiero testified that at the time of the accident he was traveling west on Crockett Street, at a speed of from twenty to twenty-five miles per hour, his car being approximately in the center lane of the street; that upon approaching the intersection of McNeil and Crockett Streets he observed the traffic signal light governing traffic on Crockett Street and that this light was green when he observed it some thirty feet east of the intersection, whereupon he continued on and had reached a point about one-half way across the intersection when he observed for the first time the lights from an automobile from the right side; and that before he could take any evasive action, his automobile was struck on the right side approximately in the middle by the other vehicle which was that being driven by Currie. He testified further that the two vehicles came to a rest near the southwest corner of the intersection.
Mr. Currie testified he was traveling south on McNeil Street at a speed of from fifteen to twenty miles per hour when he approached Crockett Street and observed the traffic signal light at the intersection was green in his favor; that just after he entered the intersection Mrs. Currie told him: "Look out, that man is going to hit us!", and that almost immediately the collision occurred. This witness testified he did not see the other car prior to the accident and that he was from fifty to sixty feet from the intersection when he noticed the traffic signal light was green for traffic crossing Crockett.
The remaining eye witness, Mrs. Currie, testified her husband was driving at a speed of not over twenty miles per hour as they approached the intersection when she observed a car driving west on Crockett Street at a speed which she considered to be in excess of twenty-five miles per hour; that she continued to observe the Ruggiero car and just as they went into the intersection she warned her husband: "That *485 car is going to hit us." Mrs. Currie further stated that she observed the traffic signal light facing southbound traffic on McNeil Street and this light was green prior to the time her husband drove into the intersection and it was green at the time of the collision.
The testimony of these witnesses clearly shows that both drivers were not observant. The record discloses that the northeast corner of the intersection is an open parking lot and there was no obstruction between McNeil and Crockett Streets which would have prevented either driver from observing the approach of the other, had they been looking. Ruggiero and Currie both admit that they did not look nor did they know of the presence of the other vehicle until the instant the two cars collided. The evidence also shows conclusively that neither motorist was driving at an excessive rate of speed. We think also it is established that Mrs. Currie gave due warning to her husband as soon as she realized the Chevrolet automobile was not going to stop and therefore, the charges by both insurers that she was guilty of contributory negligence are without merit, nor can either motorist assert the right of preemption in view of the fact that both cars apparently entered the intersection at the same time. The testimony, of course, is conflicting as to the color of the traffic signal light at the moment the two cars came into the intersection. We find ourselves unable to resolve this factual point, but find it unnecessary to do so for the reason that both drivers were negligent through failure to maintain a proper lookout.
The decisions of our courts are replete with pronouncements as to the duty of the motorist to be constantly observant. It is axiomatic that a driver should at all times be on the alert, steadily watching road conditions and keep his vehicle under such control as is commensurate with the circumstances, and the greater the hazard, the greater the degree of care which should be exercised. Rhea v. Daigle, La.App. 1954, 72 So.2d 643; Potomac Insurance Company v. City of Alexandria, La.App. 1953, 66 So.2d 22; Hogue v. Akin Truck Line, La.App.1944, 16 So.2d 366; Dyck v. Maddry, La.App.1955, 81 So.2d 165.
This court has on numerous occasions pointed out that traffic signal lights do not relieve a motorist of the general duty to operate his car with careful and prudent regard for the safety of others, and he cannot ordinarily assume that an intersection is clear simply because of the appearance of the green traffic signal lights. Judge Taliaferro aptly expressed the responsibility of a motorist entering an intersection controlled by traffic signal lights in the case of Thomas v. Leonard Truck Lines, Inc., La.App.1942, 7 So.2d 753, 755:
"Because a person has the right-of-way on a road or street does not vest him with the privilege of going forward regardless of traffic conditions. A motorist's duty to be careful never ceases. Surely he should not attempt to cross a much traveled highway until and unless he positively knows it is safe to do so."
In Greenwood v. Romby, La.App.1950, 51 So.2d 859, 861, this court made the further comment:
"While this and other Courts of the State have announced in several opinions that a green traffic light at or over a street intersection does not warrant a motorist to heedlessly drive into it, regardless of traffic conditions thereabout, it has not been held, and we do not believe it will ever be held, that a motorist who approaches such an intersection is required to exercise the same degree of care and vigilance, with respect to traffic, as he is required to exercise at an intersection not protected by a traffic light. The knowledge that intersectional traffic is regulated by a traffic light serves, to some extent, as assurance that the other *486 fellow will observe same and not heedlessly undertake crossing the intersection unless the color of the light is such that he is thereby invited to do so."
Assuming the traffic signal lights were functioning properly, and such is a fact according to the evidence adduced, then, of course, one of the two motorists entered the intersection upon the green light. In view of the above ruling of the authorities we are of the opinion that neither Ruggiero nor Currie would have been excused simply because the light was in his favor. While moving at a speed of less than twenty-five miles per hour as they approached the intersection, each was culpable in failing to observe the other. Had either noticed the other and maintained proper vigilance, it is difficult to see how the accident would have occurred. Both motorists were simply not looking and in this each was at fault.
Only questions of fact are herein involved. We have repeatedly held that the findings of the jury and of the trial judge upon questions of fact are entitled to great weight and accordingly when only issues of fact are involved, it is incumbent upon the appellants, the defendants herein, in order to secure a reversal of the decision from which they have appealed, to show that the judgment complained of is manifestly erroneous, and this they have failed to do. Guillory v. Fontenot, 1930, 170 La. 345, 127 So. 746; Kruse v. Kruse, 1932, 175 La. 206, 143 So. 50; Wagner v. Shannon, 1934, 180 La. 233, 156 So. 289; Lejeune v. Lejeune, 1937, 187 La. 339, 174 So. 643; Falgout v. Johnson, 1939, 191 La. 823, 186 So. 349; Thornton v. Ellington, 1946, 209 La. 613, 25 So.2d 282.
This brings us to the question of the amount of the award to which Mrs. Currie is entitled. The verdict of the jury in the amount of $14,000 against the defendants is termed grossly excessive, and appellants have requested this court to reduce the amount awarded.
At the time of the accident Mrs. Currie was sixty-six years of age and had retired from active work about two years before. Her injuries consisted of numerous bruises and contusions which were of a temporary nature only. She received a fracture of the right wrist which previously had been broken. This injury healed normally with some slight deformity and weakness. Six ribs on her left side were fractured and were driven in by the force of the blow sustained by her body, so that her left lung was punctured, and after full and complete treatment the ribs remained bent inward with malalignment. Mrs. Currie was hospitalized for one week and confined to her bed at home for about three months. During this period of time she was treated for traumatic pneumonia. During her confinement her injuries required that she lie partially on her right side to avoid pain in the injured chest area. At the time of trial she testified that she was still unable to attend to her domestic duties and had to depend on assistance from her husband and neighbors.
Medical evidence pertaining to the injuries sustained by Mrs. Currie and the prognosis thereof was furnished solely by Dr. S. W. Boyce, of Shreveport, Louisiana. No other physician attended Mrs. Currie nor was she examined by any other doctor for the purpose of giving testimony at the trial. On July 8, 1955, Dr. Boyce furnished one of the defendants herein the following report as to the status of Mrs. Currie's disability at that time. This report, in the main, gives his opinion concerning the multiple injuries brought about by the accident. It is as follows:
"Supplementing our letter of February 1, 1955, examination at this time reveals that the injured wrist in this case has entirely recovered and is in my opinion in normal condition. The damage to the left lung has entirely healed with no lung symptoms. The *487 fractured ribs on the left side are healed, but there is a marked deformity on that side under the arm where the ribs are bent inward. The union of the ribs in this case is probably most by scar tissue and not good firm bony union, because the ribs are bent inward, throwing the alignment into an improper angle.
"The shock and weakness associated with the injury have long since disappeared. So, this lady has the deformity of the ribs at the site of the fracture as the only after effects of the injury and in our opinion this will not produce further complications or disability."
During the trial Dr. Boyce's testimony was in some respects, at least, contradictory of the above quoted statement and the witness admitted the discrepancies upon cross examination. Because of the variance in the doctor's testimony we have carefully reviewed the lay testimony and the testimony given by Dr. Boyce upon the trial. It is our opinion that the report of July 8th, as quoted above, correctly depicts the physical condition of Mrs. Currie as of the time of the trial.
It is well known that no definite rule can be formulated suitable for the ascertainment of damages in personal injury cases. Each award must be determined from the peculiar facts of each case. In the assessment of damages the courts endeavor to maintain a degree of uniformity so far as possible and practical, to the end that awards will not be out of proportion one with the other. It is also recognized that many factors will be considered in determining an award for personal injuries and in the determination of such an award, much discretion is left to the judge or jury, and as a rule, a determination by the trial court or the jury will not be disturbed except for serious and manifest error. Authorities apposite to the foregoing principles may be found in Wainwright v. Globe Indemnity Company, La.App.1954, 75 So.2d 554, 556.
We are of the opinion that the evidence adduced in this case relating to the injuries sustained by Mrs. Currie indicates a more or less complete recovery except for the deformity of the left side of her chest due to the permanent malalignment of the ribs which were fractured. It is more than likely that Mrs. Currie had not entirely recovered her strength as of the date of trial and will continue to experience some weakness. We do believe, however, that her recovery has been of a substantial nature. For these reasons it is our opinion that the award of the jury must be considered excessive and should be reduced to $7,500, which amount we believe more in line with prevailing jurisprudence.
The judgment from which appealed, therefore, will be amended by reducing the award in favor of plaintiff and against appellants from $14,000 to $7,500, and as so amended, the judgment is hereby affirmed at appellants' cost.