GLADNEY, Judge.
This suit was instituted by Bessie Woods for personal injuries received while a passenger on a bus operated by the City of Monroe, which bus was involved in a collision with an automobile being driven by Mrs. Juanita Hinton. The City of Monroe,. Juanita Hinton and her insurer, Connecticut Fire Insurance Company, were made parties defendant. From a judgment awarding plaintiff damages against the City *209 of Monroe and rejecting her demands against the other defendants, both plaintiff and the City of Monroe have appealed.
On October 1, 1958, at 1:45 o’clock P.M., Bessie Woods boarded a Monroe City bus operated by James E. Johnson, parked on the east side of Jackson Street facing north and close to the intersection of Jackson and DeSiard Streets. While the bus was so parked, Mrs. Hinton drove her automobile to the intersection along the side of the bus and stopped on Jackson Street headed north to await the change of the signal light which controlled traffic through the intersection. Upon a favorable signal Mrs. Hinton proceeded ahead of the bus and turned east on DeSiard Street and immediately pulled over next to the south curb of DeSiard Street. The bus immediately followed Mrs. Hinton in making a right turn into the intersection. As the bus rounded the corner, because of its length, it made a wide turn and as it straightened out on DeSiard Street to proceed easterly, it came into contact with the left front of Mrs. Hinton’s car. The point of impact upon the bus was to the rear of the front wheels. Only a slight indentation or scratch was made upon the side of the bus. The damage to Mrs. Hinton’s car was negligible.
The driver of the bus testified he thought Mrs. Hinton had parked and just as he was about to straighten out his bus he heard the collision and immediately stopped. He explained that because of his position in the bus he could not observe the Hinton vehicle immediately before the two vehicles came into contact. Mrs. Hinton testified that because of the density of traffic she turned her automobile to the right toward the south curb of DeSiard Street and then turned it in a somewhat northeasterly direction and when she observed the bus completing its turn of the corner and veering in her direction, she brought her car to a stop and it was in a position of rest at the time it was struck by the bus.
At the time of the collision there were three passengers on the bus, — Bessie Woods and Mary Burkley, colored women, Bessie Woods being seated on a side seat in the rear of the bus facing the left side of the bus, and Mary Burkley on the rear cross seat of the bus, being within talking distance of each other. A third passenger was Mrs. C. D. Smith, a white woman.
Bessie Woods testified that at the time the bus stopped she was thrown against a vertical bar near her seat and immediately exclaimed: “Oh, my side!” Her testimony was corroborated by Mary Burkley and Mrs. C. D. Smith. Following the accident plaintiff complained of being hurt to the driver, James E. Johnson, and a police officer who sought to ascertain if anyone was injured. The latter offered to send Bessie Woods to a hospital, but recommended that she see her own doctor. After the vehicles came together and the bus had stopped the Hinton automobile was found to be close to the south curb of DeSiard Street, but angled in a northeasterly direction with its front end a short distance north of the parking lane.
Bessie Woods also testified that when thrown against the upright rod in the bus she was injured about her abdomen. She was proceeding to the Charity Hospital for the purpose of visiting her husband and she continued upon that journey; that after her visit at the hospital, she returned on a bus and went to the office of her regular physician, Dr. Robert M. Simonton, but the doctor’s . office being closed, she returned to her home. On the following day she again visited the doctor’s office and there was examined by Dr. Fred Marx, who was associated with Dr. Simonton. Commencing on October 3, 1958, plaintiff was treated by Dr. Simonton until November 21, 1958, at which time he estimated plaintiff had fully recovered from any injury sustained in the accident. Dr. Marx testified his examination revealed a tenderness of the right elbow and said plaintiff complained a good deal of tenderness of the right *210 lower quadrant of her abdomen and over the right hip with mild rigidity noted of the abdominal musculature. He administered sedation and diathermy. There was no external indication of a bruise or laceration and he expressed the opinion the injury was not severe. Dr. Simonton ■diagnosed plaintiff’s injuries as consisting of a strain of the right elbow, and associated strain of the right sacroiliac region with radiation of pain through the right hip region. He testified there were no objective indications of the injuries complained ■of by plaintiff and his findings were predicated on plaintiff’s subjective complaints, ■coupled with the case history.
In holding the driver of the city bus guilty of actionable negligence, the trial court reasoned that fault was due to the driver’s forward progress when he could not see how close he was to traffic on the right side of the bus. Johnson, the operator of the bus, frankly admitted he continued to drive his bus at a time when he was unable to observe the proximity of the Hinton vehicle. In this respect we agree that the operator of the bus was negligent and such negligence was a proximate cause of the accident.
The rule of liability of a carrier for injuries sustained by a passenger is set forth in Corpus Juris Secundum, and we quote:
“In a great majority of the cases it is stated that the carrier * * * must exercise the utmost care, skill, and diligence, or the highest degree of care, prudence, and foresight for the passenger’s safety, and * * *. By another form of expression, * * * the highest degree of care and skill which would be used by a person of great prudence in view of the nature and the risks of the business under the same or similar circumstances; and again the rule has been stated that the carrier is required to do all that human sagacity and foresight can do under the circumstances, in view of the character and mode of conveyance adopted, to prevent injury to passengers, the carrier being held liable for the slightest negligence with reference to the exercise of such care * * 13 C.J.S. Carriers § 678, p. 1257.
The rule there cited has been approved and followed in a number of Louisiana cases. See: Mire v. Lafourche Parish School Board, La.App.1952-1953, 62 So.2d 541; Hopkins v. New Orleans Railway & Light Co., 150 La. 61, 90 So. 512, 19 A.L.R. 1362; Matteson v. Teche Greyhound Lines, La.App., 178 So. 272; Wallace v. Shreveport Railways Co., La.App., 175 So. 86; Hart v. Gulf, Mobile & Northern R. Co., La.App., 167 So. 166; Baptiste v. New Orleans Public Service, La.App., 161 So. 783; Shally v. New Orleans Public Service, etc., 1 La.App. 770, affirmed 159 La. 519, 105 So. 606.
The evidence preponderates to the effect plaintiff was jolted by the sudden stopping action of the bus and thrown against an upright rod standing adjacent to her seat. She immediately complained of her injuries to Mary Burkley and thereafter to the driver of the bus and the investigating city police officer. The medical testimony is not controverted. Although the collision of the two vehicles was of a minor nature and both of the doctors who testified were of the opinion the injuries to Bessie Woods were of a minor nature, the trial judge found Bessie Woods was still suffering from some pain as of the time of trial, some eight months after the accident. We are of the opinion the award of $750 for pain and suffering and the sum of $111 for medical bills, or a total award of $861 is neither inadequate nor excessive.
The judgment from which appealed is affirmed at appellant’s cost.