131 So.2d 147 (1961)
Jacob E. PATTERSON et ux., Plaintiffs-Appellants,
v.
HARDWARE MUTUAL CASUALTY COMPANY et al., Defendants-Appellants.
No. 9504.
Court of Appeal of Louisiana, Second Circuit.
June 1, 1961.
Rehearing Denied June 22, 1961.
Morgan, Baker, Skeels, Middleton & Coleman, Shreveport, for plaintiffs-appellants.
Bodenheimer, Looney & Richie, Shreveport, for defendants-appellants.
Cook, Clark, Egan, Yancey & King, Shreveport, for Southern Farm Bureau Cas. Ins. Co.
HARDY, Judge.
This is an action in tort by plaintiffs, husband and wife, for medical expenses and for personal injuries received by the wife and plaintiffs' minor daughter. The named defendants are Hardware Mutual Casualty Company, insurer of Charles F. Doehring, and Southern Farm Bureau Casualty Insurance Company, insurer of Isaac F. Chanler, the named assureds being the drivers of the vehicles involved in the accident which is the basis for this action. After trial there was judgment in favor of plaintiff wife against the defendants, in solido, in the principal sum of $5,000; in favor of plaintiff husband for medical expenses in the amount of $1,485.29 against both defendants, in solido, subject to a credit in favor of defendant, Southern Farm Bureau Casualty Insurance Company, in the sum of *148 $210.54 paid on medical expenses, and further subject to the $5,000 liability limit of the policy issued by said defendant; further judgment in favor of plaintiff husband for the use and benefit of his minor child, Carmen Patterson, and against the defendants, in solido, in the sum of $150, and in favor of the same plaintiff against the defendants, in solido, in the sum of $76.70 for medical expenses incurred in the treatment of said minor. There was further judgment in favor of plaintiff husband individually and against the defendant, Southern Farm Bureau Casualty Insurance Company, for penalties in the amount of 12% on the sum of $1,114.65 incurred as medical expenses, together with attorney's fees in the sum of $150. From this judgment all parties, both plaintiffs and defendants, have appealed.
In briefs and argument before this court the errors on the part of the judgment appealed from are specified (1) by defendant, Southern Farm Bureau Casualty Company in the holding of the trial judge that its assured, Isaac Chanler was guilty of negligence which was a proximate cause of the accident, and further in assessing the named defendant with penalties for failure to make payments of medical expenses under its policy provisions; (2) on the part of defendant, Hardware Mutual Casualty Company, in the failure of the trial judge to find that its assured, Doehring, entered the intersection on a green light and was free from negligence; and (3) on the part of plaintiffs with respect to quantum.
The principal errors urged by defendants primarily require the determination of a factual question, that is: which driver was favored by the green light at the time of his entry into the intersection?
We proceed to a discussion of the material facts, as disclosed by the record, which bear upon the resolution of this issue.
The accident occurred in the southeast quadrant of a "T" intersection made at approximately a forty-five degree angle by the entry, from the east, of Crockett Street into Texas Avenue, in the City of Shreveport. The intersection is governed by four semaphore traffic signals placed on standards located at or near the sidewalks along the intersecting thoroughfares. At about 3:00 p. m. on October 6, 1958, the 1951 Chevrolet pickup truck driven by Chas. F. Doehring and insured by defendant, Hardware Mutual, moving westerly from Crockett Street into the Texas Avenue intersection, collided with a 1952 model Chevrolet pickup truck which was being driven in a northerly direction on Texas Avenue by Isaac Chanler, insured by Southern Farm Bureau. Doehring was alone in his vehicle but Chanler was accompanied by his wife, seated next to him, his daughter, Mrs. Grace Chanler Patterson, one of the plaintiffs, seated on the right-hand side of the seat of the cab of his truck, and his granddaughter, Carmen, known as "Connie", Patterson, who was standing on a piano stool in the bed of the truck holding onto and looking over the top of the cab of the vehicle. Both Doehring and Chanler make the same contention, supported by their respective testimony, that they entered the intersection on a green light signal. Obviously one or the other is mistaken. Chanler testified that as he was moving northerly on Texas Avenue at a speed of approximately fifteen miles per hour, he was keeping under observation the traffic signals; as he was approximately twenty feet from the stop line the signal governing movement of traffic on Texas Avenue changed from red to green, whereupon he continued at the same speed into the intersection without observing the entry of the Doehring truck from his right, and that he was made aware of the danger of a collision only by the shouted warning of his daughter, Mrs. Patterson, at which time it was too late to avoid the accident. Doehring testified that he observed the approach of the Chanler vehicle but continued the movement of his vehicle at a speed of some fifteen miles per hour into the intersection, relying upon the green light signal in his favor, and, at the last moment, he attempted to avoid the collision by swerving his car to the left, after having already applied his *149 brakes. Fortunately we are not required to attempt to decide this factual question solely upon the testimony of the drivers. Chanler's version of the accident received some corroboration from his ten-year old granddaughter, "Connie" Patterson, who testified that looking over the cab of the truck she observed the signal on Texas Avenue change from red to green as the vehicle approached the intersection. However, the strongest testimony on the part of plaintiffs, offered on trial of the case, was developed from an entirely disinterested witness, one H. A. Graves. This witness testified that immediately prior to the collision he was engaged in walking from the west to the east side of Texas Avenue along the northern pedestrian crossing; that almost immediately after he stepped from the west curb the light facing him (which governed approaching traffic from Crockett Street) changed from green to the amber caution signal; that he realized the necessity for making a hurried completion of the crossing; that as he was approximately halfway across the street the light changed to red and he ran to the east curb of the sidewalk along Texas Street, proceeded a few paces to the north then heard the sound of the impact, and turned to observe that the two trucks had collided within the intersection.
In view of the above positive testimony of the witness named, which can neither be disregarded nor minimized as to its effect, we think it impossible to do otherwise than hold that the uncorroborated testimony of Doehring to the effect that he entered the intersection upon a green light was in error. It necessarily follows that the contention of Chanler must be accepted.
Counsel for defendant, Hardware Mutual, strenuously urges the legal proposition that the driver of a vehicle entering an intersection is required to make observation of traffic, despite his right-of-way by reason of traffic signals, citing Moss v. Travelers Insurance Company, La.App., 119 So.2d 160; Koob v. Co-Operative Cab Company, 213 La. 903, 35 So.2d 849; Kientz v. Charles Dennery, Inc., 290 La. 144, 24 So.2d 292, and Currie v. Government Employees Insurance Company et al., La.App., 90 So.2d 482.
Howevermuch we might have been inclined some years ago to accept this argument and the authorities cited, we think this particular question has been finally and irrevocably determined by the pronouncements of the Supreme Court in Bryant v. Ouachita Coca-Cola Bottling Company, 239 La. 83, 117 So.2d 919; and Youngblood v. Robinson et al., 239 La. 338, 118 So.2d 431.
In the Bryant case the opinion of Mr. Justice Hamlin declared [239 La. 83, 117 So.2d 922]:
"Since Adams was proceeding on a favorable light under a semaphore system, he was not held to the same degree of care and vigilance as if no such system prevailed. * * * He had the right to assume that the signals were understood and would be obeyed by the motorist driving on the unfavored light. Under such assumption, we do not find that Adams was negligent in not looking at the traffic which was presumed to be stopped for the red light."

In the Youngblood case the opinion of Mr. Justice McCaleb contains the following definite declaration [239 La. 338, 118 So.2d 434]:
"But when a crossing is protected by an electric semaphore light it is not essential for the favored driver to look for violations by side-street traffic facing the red light for that traffic is not only required to stop but to remain stationary until the semaphore changes to green.
"This Court has given implied recognition to this distinction and has specifically held that it is not necessary for one intending to traverse an intersection on a green semaphore light to look to the left or the right before entering."

*150 Despite some still troublesome reservations on our part as to the correctness of the above pronouncements, we are nonetheless impelled to follow what appears to us to be an abundantly clear and definite enunciation, particularly in view of the fact that both of the above cited cases effected reversals of contrary conclusions reached by this court.
Since we have found, as above noted, that the record conclusively establishes the fact that the Patterson vehicle entered the intersection on a green light, in consideration of the holdings of the Supreme Court in the above cited cases that under such circumstances the driver of the favored vehicle is not required to make observation of side-street traffic but may rely upon the positive necessity for obedience to the signal by drivers approaching on a side street, we think there can be no question as to the conclusion of error on the part of the judgment which condemned Chanler's insurer for liability.
We next approach the question as to the justification for the award of penalties for failure of Chanler's insurer, Southern Farm Bureau, to make payment of medical expenses as provided in its policy.
Reference to the policy discloses that in addition to and entirely distinct from its provisions with respect to liability coverage it contains the following obligation:
"To pay all reasonable expenses incurred within one year from the date of accident for necessary medical, surgical, X-ray and dental services, including prosthetic devices, and necessary ambulance, hospital, professional nursing and funeral services:
* * * * * *
"To or for any other person who sustains bodily injury, caused by accident, while occupying
"(a) The owned automobile, while being used by the named insured, by any resident of the same household or by any other person with the permission of the named insured."
Under the above plain and unambiguous contractual obligation we cannot conceive of any basis upon which this insurer could have justifiably denied its liability for payment of medical expenses incurred by occupants of the insured vehicle. It is true that able counsel for this defendant in argument and brief devoted some substantial attention to the question of "double recovery" in view of the policy's maximum liability limitation. In consideration of our factual finding, as above set forth, which serves to relieve this defendant of liability for personal injuries, this contention is no longer an issue. Accordingly, we move to a discussion of the penalty assessed by the lower court.
Counsel argues that the failure of defendant, Southern Farm Bureau, to make payment of medical expenses was not "arbitrary, capricious or without probable cause," and, further, that the insurer was never furnished with any accurate statement as to the medical expenses claimed by plaintiff, that a state of confusion existed as to the correct amount of medical expenses and even the demand made by counsel for plaintiffs was inaccurate.
The record discloses that counsel for plaintiffs first asserted a demand for payment of medical expenses by letter directed to the State Claims Manager of Southern Farm Bureau under date of December 9, 1958, slightly more than two months following the occurrence of the accident, in which communication counsel requested the said insurer to forward "* * * such forms as you require for the proper presentment of claims for medical reimbursement."
This letter was unanswered, and another communication was directed to the said insurer, by counsel for plaintiffs, under date of January 23, 1959, making demand for payment of medical bills which "* * * you have previously received. We are advised *151 that you have received these bills more than thirty days ago."
There was additional correspondence by counsel for plaintiffs with this defendant until, on May 8, 1959, the Claims Supervisor for the insurer finally advised plaintiffs' counsel that they would defend the matter of liability in court.
Regardless of the question of liability under the policy for damages for personal injuries, we think there was no reasonable ground for the refusal of this defendant to make payment of incurred medical expenses under the policy provision above set forth.
We regard defendants' failure to make any reasonable attempt to compute and settle the medical expenses incurred as being arbitrary, capricious, unreasonable and without probable cause, which unjustified action properly subjected it to the application of statutory penalties for its failure in this respect. The contention made as to the lack of definite information as to amounts, etc., can only be considered as constituting mere excuses and not acceptable reasons, for these amounts could have been ascertained; defendant was in possession of reliable information as to the cost of medical expenses, and any existing differences could unquestionably have been settled readily, accurately and amicably, if the insurer had so desired, at any time during the six months period following the accident within which it was being importuned by counsel for plaintiffs to make payment. With respect to this portion of the judgment we find no error.
Finally we have been confronted with the necessity for making an examination of the quantum of the award of damages for injuries to Mrs. Patterson and her ten-year old daughter, Carmen.
The award of $150, plus medical expenses incurred in the treatment of the little girl, may be briefly disposed. Following the accident the child was taken to the hospital for examination and overnight observation, found desirable because of her complaints of pain in the stomach and the possible existence of internal injuries. No such involvement was detected, and, fortunately, the little girl recovered without incident from the temporary pain and shock induced by the accident. Under these circumstances we think the nominal award of damages in the sum of $150 together with medical expenses, is neither inadequate nor excessive.
There can be no question as to the serious nature of the injuries sustained by the plaintiff, Mrs. Patterson, who suffered a comminuted fracture of the mid-third of the left clavicle with complete overriding of the bone fragments, a serious strain of the cervical spine in the nature of a "whiplash" type injury, and an acute lumbosacral strain. Mrs. Patterson was hospitalized immediately after the accident on October 6th; an open reduction of the fractured clavicle was performed and she remained in the hospital until discharged on October 21, 1958. During this period of hospitalization pelvic traction was applied for the relief of the injury to the lumbosacral area of the back, but it was impossible to apply cervical traction because of the operative procedure on the fractured clavicle. Another period of hospitalization was necessary between the dates of January 14th and January 18, 1959, for the purpose of the removal of the intramedullary pin at the site of the clavicle fracture. Following her discharge from the hospital in January Mrs. Patterson was treated for her injuries on numerous occasions, which treatment comprehended the application of intermittent cervical traction both on the occasions of her visits to her physician's office in Shreveport and at home; the application and almost constant wearing of a low back brace; the use of a cervical collar; physiotherapy and various medications of anti-spasmodics and sedatives. Trial of this case was had slightly more than fifteen months following the accident and at the time of trial Mrs. Patterson continued to complain of pain to a degree and extent which interfered with the *152 performance of her normal duties as a housewife and her further activities in assisting in the operation of a fishing camp, which operation she had been accustomed to assume prior to the accident during the absence of her husband on his regular job. Specifically the complaints of this plaintiff, who was approximately twenty-nine years of age at the time of the accident, consisted of severe pain in her neck, shoulders, lower back, occipital headaches, a radiating pain in the right leg, lack of sleep by reason of pain, and inability to remain on her feet and perform her physical duties of housework and the boat landing operation for any long continued period of time.
The record contains the testimony of a number of medical practitioners who treated Mrs. Patterson, all of whom appeared as witnesses on behalf of plaintiffs; namely, Dr. Ray E. King, an orthopedic surgeon, Dr. Samuel L. Lieber, a specialist in internal medicine; Dr. George E. Wilson, a surgeon, and Dr. Heinz K. Faludi, a neurosurgeon. The testimony of these eminently qualified witnesses amply sustains the conclusion that Mrs. Patterson's injuries were severe, painful and long continued. Even as of the time of trial the testimony of the medical witnesses consistently expressed the opinion that though her condition had improved, the pain and disability would continue for an indefinite period of time.
It is earnestly contended by counsel for plaintiffs that the award in favor of Mrs. Patterson should be increased to the sum of $20,000. While we cannot justify such a substantial increase, we do agree that the award made, under our appreciation of the nature of the injuries and the results therefrom, was somewhat inadequate, and in our opinion should be increased to the principal sum of $8,000.00.
For the reasons assigned the judgment appealed from is amended to the extent of rejecting the demands of plaintiff, Mrs. Grace Chanler Patterson, against the defendant, Southern Farm Bureau Casualty Company, for damages in the nature of liability for personal injuries; the judgment is further amended by rejecting the claims of Jacob E. Patterson for damages in the nature of personal injuries for the use and benefit of his minor child, Carmen Patterson, as against Southern Farm Bureau Casualty Insurance Company; and, finally, the judgment is amended by increasing the amount of the award in favor of plaintiff, Mrs. Grace Chanler Patterson, and against the defendant, Hardware Mutual Casualty Company, to the principal sum of $8,000.00.
It Is Further Ordered that costs of the trial court be apportioned and taxed to the extent of one-fourth of the amount thereof against the defendant, Southern Farm Bureau Casualty Insurance Company, and three-fourths against the defendant, Hardware Mutual Casualty Company. All costs of these appeals are taxed against the defendant-appellant, Hardware Mutual Casualty Company.
Subject to the above amendments the judgment appealed from is otherwise affirmed.

On Applications for Rehearing
PER CURIAM.
Applications for rehearing have been filed on behalf of plaintiffs and defendant, Hardware Mutual Casualty Company.
The questions raised by plaintiffs' application for rehearing obviously result from a misinterpretation of the judgment of the court. Upon examination of the judgment we find there is ground for misinterpretation and accordingly, counsel for all parties having evidenced their agreement to such action, we think it desirable to clarify the judgment rendered by this per curiam.
The decree of the court on original hearing hereof is therefore amended by recasting the judgment appealed from as follows:
It Is Ordered, Adjudged and Decreed that there be judgment in favor of plaintiff, Mrs. Grace Chanler Patterson, and against *153 the defendant, Hardware Mutual Casualty Company, in the principal sum of $8,000, with legal interest thereupon from date of judicial demand until paid.
There is further judgment in favor of plaintiff, Jacob E. Patterson, and against the defendant, Hardware Mutual Casualty Company, for the use and benefit of his minor child, Carmen Patterson, in the sum of $150, together with interest thereon from date of judicial demand until paid.
It Is Further Ordered, Adjudged and Decreed that there be judgment in favor of plaintiff, Jacob E. Patterson, and against the defendant, Hardware Mutual Casualty Company, in the sum of $1,485.29, representing medical expenses incurred in the treatment of his wife, Mrs. Grace Chanler Patterson, and in the further sum of $76.60, representing medical expenses incurred in the treatment of his daughter, Carmen Patterson, together with legal interest thereon from date of judicial demand until paid.
It Is Further Ordered, Adjudged and Decreed that there be judgment in favor of the plaintiff, Jacob E. Patterson, and against the defendant, Southern Farm Bureau Casualty Insurance Company, in the sum of $1,274.75, representing medical expenses incurred within one year from the accident, less amounts previously paid by said defendant, together with 12% interest as penalty on $1,114.65 and $150 attorney's fees.
Costs of the trial court are apportioned and taxed to the extent of one-fourth of the amount thereof against the defendant, Southern Farm Bureau Casualty Insurance Company, and three fourths against the defendant, Hardware Mutual Casualty Company, and all costs of this appeal are taxed against the defendant-appellant, Hardware Mutual Casualty Company.
As amended and recast the judgment appealed from is affirmed.
The respective applications for rehearing are denied.