136 So.2d 740 (1961)
Elsie LE BEAU, Plaintiff-Appellant,
v.
BATON ROUGE BUS CO., Inc., Defendant Appellee.
No. 5426.
Court of Appeal of Louisiana, First Circuit.
December 27, 1961.
Rehearing Denied February 6, 1962.
Certiorari Denied March 16, 1962.
Cobb & Brewer, by Arthur Cobb, Baton Rouge, for appellant.
Taylor, Porter, Brooks, Fuller & Phillips, by Frank W. Middleton, Jr., Baton Rouge, for appellee.
Before ELLIS, HERGET and MILLER, JJ.
ELLIS, Judge.
It is agreed by counsel that there is no dispute as to the factual issue involved in this case but counsel for plaintiff-appellant contends that the Lower Court erred in its interpretation of the facts and the law applicable thereto.
On May 8th, 1959 the plaintiff, Elsie LeBeau, boarded a bus owned and operated by the defendant, Baton Rouge Bus Company, Inc., at the intersection of North Street and North Eighth Street and remained standing in the bus although seats were available at the time. The bus was traveling east on North Street at a speed of twenty to twenty-five miles per hour, and when it neared the intersection of North Ninth with North Street, the traffic light was green for traffic on North Street and the operator of the bus therefore continued *741 into the intersection, intending to cross on the green light.
As one approaches this intersection the view of the traffic on North Ninth Street approaching from the left is obstructed until one is almost into the intersection by a house and a raised yard surrounded by a brick wall built close to the street. The light in the intersection having turned green just before the bus got there, the operator continued at twenty or twenty-five miles per hour, the speed limit being thirty miles per hour at that time, and just as he reached the intersection and prior to entering it, he saw a car coming down Ninth Street, which was approximately fifty feet north of the intersection, headed south and traveling at a speed of forty or fifty or sixty miles per hour, but which he realized in any event was going so fast that the driver obviously could not come to a stop before running the red light. The operator of the bus immediately put on his brakes in order to prevent a collision with the car which enabled the driver of the unknown car to swerve to its left and pass in front of the bus before the latter stopped approximately half way into the intersection.
The plaintiff had not gone to any seat but was standing in the bus but behind the driver, and when the brakes were applied she fell forward and the operator of the bus threw out his arm in an attempt to catch her but she fell across his lap and bumped her head on the windshield of the bus immediately in front of the driver's seat. There is not the least doubt but that if the bus driver had not made an emergency stop he would have had a collision with the fast moving motor vehicle which ran the red light. There is no doubt but that the corner is somewhat of a blind corner, but is controlled by the electric semaphore light which was green for the bus.
There was quite a bit of testimony taken on the trial with regard to the question of whether or not the plaintiff was waiting for change and that is why she was supposed to be standing behind the driver, however, the lower court resolved this fact against her. Counsel for plaintiff in his brief does not raise this factual issue on appeal. Without that there is no reason why the plaintiff should not have been sitting down as seats were available and the bus had traveled a whole block after she had boarded it.
Counsel for plaintiff has, in his brief, however, suggested that the bus driver was negligent for not "suggesting to plaintiff that she take a seat and not calling to her attention that it was dangerous for her to stand in the aisle." He cites no authorities to support this contention however counsel for defendant has cited to us Murphy v. New Orleans Public Service, La. App., 169 So. 890; Thomas v. Shreveport Rys. Co., La.App., 187 So. 822, and Miller v. New Orleans Public Service, Inc., La.App., 196 So. 86. In the Murphy case it was held that a "Driver of trackless trolley bus held under no obligation to wait until passengers were seated before resuming journey." In the Thomas case the Court recognized that the Supreme Court had ruled that a motorman is not required to keep his bus stopped until a plaintiff is seated, citing Sharp v. New Orleans City Railroad Company, 111 La. 395, 35 So. 614. In this case the plaintiff proved that she had handed the motorman a fifty cent piece and requested him to sell her a book of four tickets and waited for the book and the change. After the motorman handed the change and book to her she turned and faced the farther end of the trolley with the intention of immediately proceeding to the seat reserved for colored patrons, but before reaching it the trolley, which had been moving forward, came to a sudden stop which caused her to loose her balance and fall. The operator of the trolley flatly denied any such incident, however, the court accepted the plaintiff's testimony and that of corroborative witnesses and gave judgment for the plaintiff. The court recognized the law to be that an operator of a trolley did not have to wait until the passenger reached the seat but could not without rhyme or reason, suddenly stop the trolley. In the Miller case the Orleans, *742 now the Fourth Circuit, Court of Appeal held that unless there was something about the passenger's appearance to make it apparent that the passenger was old or infirm, or otherwise physically incapacitated, or is unusually incumbered with bundles, it is not negligent for the operator of a street car to cause it to start before the passenger has obtained a seat. Therefore, in the case at bar there was no duty upon the operator of the bus to warn or suggest to the passenger that it would be dangerous for her to stand. In addition, there were seats available and plenty of time for her to have occupied one before the bus had traveled the entire block.
There is no question but that the law is well settled that upon the showing of injury of a fare paying passenger in a public carrier it establishes a prima facie case of negligence and imposes upon the carrier the burden of overcoming such a case. Also, the public carriers owe the highest degree of care with respect to their passengers. Coleman v. Continental Southern Lines, Inc., La.App., 107 So.2d 69; Peters v. City of Monroe, La.App., 91 So.2d 428; Harris v. Shreveport Railways Company, La.App., 83 So.2d 517; Pero v. Shreveport Rys. Co., La.App., 78 So.2d 66; Dickson v. Yellow Cab Co. of Shreveport, Inc., La.App., 61 So.2d 230; Woods v. Hinton, La.App., 116 So.2d 208; Mansfield v. Toye Bros. Yellow Cab Co., La.App., 78 So.2d 544; Hopper v. Shreveport Rys. Co., La.App., 51 So.2d 845, and other cases too numerous to cite.
Counsel for defendant contends, and it was sustained by the Lower Court, that the prima facie case of the plaintiff was completely rebutted by the undisputed proof that the bus driver was proceeding in a careful manner well within the speed limit and just before approaching the intersection the light turned green for him, and he then had a right to assume that traffic on North Ninth Street would obey the red signal controlling that street, even though the bus driver could not see oncoming traffic on Ninth Street because of the building, the raised yard and the brick retaining wall around this yard, until he had gotten practically to the line of the intersection, and at that time he immediately saw the danger or the emergency which the unknown driver had created in that the latter could not stop for the red light at the speed he was making. Therefore the bus driver was compelled, in order to avoid a serious collision, to apply his brakes.
On the other hand counsel for plaintiff contends that the bus was approaching a somewhat blind intersection with a street which the driver knew to be an expressway with fast moving traffic, and that emergencies which require a sudden stop often arise at such intersections even though the intersection is governed by a traffic light. In addition the bus driver knew that he had a standing passenger; that if the common carrier creates the slightest risk to its passengers, which it could avoid by the utmost care and diligence, the carrier is negligent. He further contends that the risk of injury was foreseeable and could have been avoided and suggests that it is not unreasonable that the defendant be required to proceed at a very slow speed, or possibly to stop before entering a dangerous intersection which is completely blind, especially when the driver knows that he has standing passengers, even though defendant has a green light. Counsel stated further in his brief:
"It becomes clear that defendant played a very definite part in the creation of the emergency situation by entering the intersection at a speed of twenty to twenty-five miles per hour, and that this was a breach of the high duty of care that the defendant owes to passengers, particularly standing passengers."
We do not agree with the contention of the plaintiff which, simply stated, is that the bus driver in this case, even though the speed limit was 30 miles per hour, had no right to proceed toward this intersection at a speed of 20 to 25 miles per hour because it was somewhat of a blind intersection, and was situated in a street which the driver *743 knew to be an expressway with fast moving traffic, and, therefore, should anticipate that some operator of a motor vehicle entering to his left would run the red light and thereby require a bus operator to apply his brakes with the likelihood of injury to a passenger or passengers.
The law does not sustain plaintiff's contention. In the case of Wayne v. New Orleans Public Service, 52 So.2d 55, 57, decided by the Orleans, now the Fourth Circuit, Court of Appeal, which involved an injury to a passenger on a bus when she was thrown to the floor of the bus due to the fact that the driver unexpectedly stopped in an attempt to avoid striking a pedestrian, under which facts the court held that the "emergency doctrine" applied to public carriers and that the omnibus driver, faced with the emergency of avoiding a pedestrian, was not negligent in suddenly stopping. On this question the Court stated:
"It is well settled under our jurisprudence that the `emergency doctrine' applies to public carriers of passengers for hire and will serve to exculpate them from situations where emergencies have arisen through no fault of theirs and accidents ensue.
"In the case of Oppenheim v. Toye Bros. Yellow Cab Co., La.App., 7 So.2d 420, 424, this court was of the opinion that:
"`It is well established that there is no liability in a public carrier where the accident results from an emergency created entirely by causes for which the carrier is not responsible. In Upton v. Bell Cabs, Inc. et al, La.App., 154 So. 359, 363, we said:
"`"There is also a rule of law that, if one is confronted with a sudden emergency which is not in any way brought about by his negligence, he is not liable even if it is subsequently shown that by acting differently under the circumstances the accident would have been avoided. Mitchell v. Ernesto et al (La.App.) 153 So. 66, decided by this court March 12, 1934, and authorities cited therein."'
"In Teche Lines, Inc. v. Gorum, 202 La. 993, 13 So.2d 291, 293, the Supreme Court was of the opinion that: `An automobile driver who, by the negligence of another and not by his own negligence, is suddenly placed in an emergency and compelled to act instantly to avoid a collision or injury is not guilty of negligence if he makes such a choice as a person of ordinary prudence placed in such a position might make, even though he did not make the wisest choice and one that would have been required in the exercise of ordinary care, but for the emergency.'"
Counsel in his brief suggests that the language used in the holding of the above case was an unfortunate choice and should not be applied as the test of the duty of a common carrier to its passengers. This criticism is really levelled at language used by the Supreme Court in the Teche Lines case which, in effect, holds that a bus driver in an emergency who makes such a choice as a person of ordinary prudence placed in such a position might make, even though he did not make the wisest choice and one that would have been required in the exercise of ordinary care, but for the emergency, is not guilty of negligence. He contends that the test of a driver of a common carrier is not the test of a person of ordinary prudence, but the carrier is required to do all that human sagacity and foresight can do under the circumstances in relation to its passengers. The emphasized portion of plaintiff's contention comes from words used by this court in Mire v. Lafourche Parish School Board, 1952, 62 So.2d 541. That case, of course, is entirely different factually and involved the duties of a school bus operator toward his children in alighting from the bus and crossing a road or highway. In that case the bus operator did not get off the bus as required by his contract but appointed a fifteen year old boy to accompany a young passenger. We are of the opinion that the driver of the bus in the present case did all that human sagacity and foresight could have done under the circumstances. He *744 stayed within the speed limit, watched the traffic light, saw that it was green prior to his reaching the intersection and when he got where he could see, even though the light was green, he immediately observed and saw the unknown car approaching at a terrific speed and acted immediately upon the belief that the car was going to violate the red light. There is no legal duty upon the bus operator to anticipate or assume that motorists are going to violate a red light, or that an emergency will be created at every intersection. It is well-settled in our law by the jurisprudence that a motorist, including a bus operator, approaching and entering an intersection controlled by a traffic signal or a stop sign, is entitled to assume that the signals will be understood and obeyed, and is not required to anticipate that other motorists will violate the law. Gautrcaux v. Southern Farm Bureau Casualty Company, La.App., 83 So.2d 667; White v. Travelers Insurance Company, etc., La.App., 94 So.2d 564; Duree v. State, La.App., 96 So.2d 854; Steele v. State Farm Mutual Insurance Company, 235 La. 564, 105 So.2d 222; Henderson v. Central Mutual Insurance Company, 238 La. 250, 115 So.2d 339; Youngblood v. Robison, 239 La. 338, 118 So.2d 431; Randall v. Baton Rouge Bus Company, 240 La. 527, 124 So.2d 535, 543; Andrea v. Hicks, La.App., 125 So.2d 251; Smith v. Aetna Casualty and Surety Company, La.App., 128 So.2d 235, 237; Noonan v. London Guarantee and Accident Company, La.App., 128 So.2d 918, 919; McCoy v. State Farm Mutual Insurance Company, La.App., 129 So.2d 66, 69; Warner v. Insurance Company of the State of Pennsylvania, La.App., 129 So.2d 320, 322; Patterson v. Hardware Mutual Cas. Co., La. App., 131 So.2d 147, 149; Benoit v. Vincent, La.App., 132 So.2d 75, 76.
In Youngblood v. Robison, supra, our Supreme Court settled the law which has been followed by subsequent decisions. It stated [239 La. 338, 118 So.2d 433]:
"There is nothing contained in the testimony of Dr. Guice which warrants a holding that he failed to exercise ordinary prudence in his approach to and negotiation of the crossing. He was driving at a reasonable rate of speed and maintaining a general observation of the intersection. Thus, he had his car under such control as to meet and respond to any hazard which might be expected under normal conditions and this was all that the law required of him. He was not obliged, as the Court of Appeal indicates, to turn his head in the direction of traffic approaching from his left or right, or from both left and right, to ascertain whether someone might violate the law by running the crossing on a red light. On the contrary, he had the right, under our jurisprudence, to assume that the law would be respected.
"In Koob v. Cooperative Cab Co., 213 La. 903, 35 So.2d 849, 851, where a stop sign was involved, the Court said:
"`* * * The motorist on the right-of-way street, with knowledge of the location of such a stop sign, has a right to assume that any driver approaching the intersection from the less favored street will observe the law and bring his car to a complete stop before entering the intersection, and such motorist can indulge in this assumption until he sees, or should see, that the other car has not observed, or is not going to observe, the law.'"
This rule has been cited and followed on several occasions, notably in Ryan v. Allstate Insurance Company, 232 La. 831, 95 So.2d 328; Steele, Steele for Use and Benefit of, v. State Farm Mutual Insurance Company, 235 La. 564, 105 So.2d 222 and Henderson v. Central Mutual Insurance Company, 238 La. 250, 115 So.2d 339.
"The above cited jurisprudence governing cases where stop signs were involved applies, a fortiori, to intersections controlled by electric semaphore lights. When an intersection is controlled by a stop sign, the motorist on the favored street, as stated in the Koob case, is entitled to indulge in the assumption that any driver approaching *745 from the less favored street will bring his car to a complete stop before entering the intersection. Nevertheless, some slight observation of the other car must be exercised because the motorist on the less favored street, who has stopped in obedience to the stop sign, is entitled to proceed whenever it appears to him, as a reasonably prudent man, that it is safe for him to negotiate the crossing. But when a crossing is protected by an electric semaphore light it is not essential for the favored driver to look for violations by side-street traffic facing the red light for that traffic is not only required to stop but to remain stationary until the semaphore changes to green.
"This Court has given implied recognition to this distinction and has specifically held that it is not necessary for one intending to traverse an intersection on a green semaphore light to look to the left or the right before entering.
"In Kientz v. Charles Dennery, Inc., 209 La. 144, 24 So.2d 292, 295, a case very similar to this one, the Court refused to hold a truck driver proceeding on a green light guilty of negligence for failing to observe that plaintiff's husband was not going to stop in obedience to a red signal light, which was not working at the time. In support of the ruling the opinion cited Manuel v. Bradford, La.App., 166 So. 657; Clark v. De Beer, La.App., 188 So. 517; Seiner v. Toye Brothers Yellow Cab Company, La.App., 18 So.2d 189 and Fitzpatrick v. New Orleans Public Service, La.App., 22 So.2d 473, and concluded by adopting with approval the following observations:
"`We are living in an advanced stage of the motor age. Heavy and congested vehicular traffic on the streets and highways is a daily rule rather than an exception. In these circumstances, it is vital to the public interest that the traffic rules and regulations be adhered to strictly (particularly with reference to the traffic semaphore system) as the motorist is, to a large extent, compelled to operate his car in the belief that the law will be obeyed by others. Hence, in gauging the fault which is attributed to one, who was operating his car in obedience to positive law, the courts should be convinced that the dereliction was most substantial and that it was such a direct factor that, without it, the accident would not have occurred.'"
In Patterson v. Hardware Mutual Casualty Company, supra, the Second Circuit Court of Appeal held [131 So.2d 149]:
"Counsel for defendant, Hardware Mutual, strenuously urges the legal proposition that the driver of a vehicle entering an intersection is required to make observation of traffic, despite his right-of-way by reason of traffic signals, citing Moss v. Travelers Insurance Company, La.App., 119 So. 2d 160; Koob v. Cooperative Cab Company, 213 La. 903, 35 So.2d 849; Kientz v. Charles Dennery, Inc., 209 La. 144, 24 So.2d 292, and Currie v. Government Employees Insurance Company et al., La.App., 90 So.2d 482.
"Howevermuch we might have been inclined some years ago to accept this argument and the authorities cited, we think this particular question has been finally and irrevocably determined by the pronouncements of the Supreme Court in Bryant v. Ouachita Coca-Cola Bottling Company, 239 La. 83, 117 So.2d 919; and Youngblood v. Robison et al., 239 La. 338, 118 So.2d 431.
"In the Bryant case the opinion of Mr. Justice Hamlin declared (239 La. 83, 117 So.2d 922):
"`Since Adams was proceeding on a favorable light under a semaphore system, he was not held to the same degree of care and vigilance as if no such system prevailed. * * * He had the right to assume that the signals were understood and would be obeyed by the motorist driving on the unfavored light. Under such assumption, we do not find that Adams was negligent in not looking at the traffic which was *746 presumed to be stopped for the red light.'

"In the Youngblood case the opinion of Mr. Justice McCaleb contains the following definite declaration (239 La. 338, 118 So.2d 434):
'"But when a crossing is protected by an electric semaphore light it is not essential for the favored driver to look for violations by side-street traffic facing the red light for that traffic is not only required to stop but to remain stationary until the semaphore changes to green.
"`This Court has given implied recognition to this distinction and has specifically held that it is not necessary for one intending to traverse an intersection on a green semaphore light to look to the left or the right before entering.' "Despite some still troublesome reservations on our part as to the correctness of the above pronouncements, we are nonetheless impelled to follow what appears to us to be an abundantly clear and definite enunciation, particularly in view of the fact that both of the above cited cases effected reversals of contrary conclusions reached by this court."
Also see Green v. Baton Rouge Bus Company, Inc., La.App., 66 So.2d 344, and Gross v. Teche Lines, Inc., 207 La. 354, 21 So.2d 378.
We are of the opinion that under the facts and the law the judgment of the lower court is correct and we find as he did and hold as he did, that the operator of the bus at all times maintained a proper lookout and kept his vehicle under control, while driving well below the speed limit and at a reasonable rate of speed in approaching the intersection; that the bus operator had a green light which entitled him to go into and across the intersection; that he observed as soon as possible under the conditions the emergency created by the unknown vehicle approaching at a terrific speed with the certainty of coming into the intersection and colliding with the bus; that he acted with the greatest prudence and did the only thing that could have been done by applying his brakes and avoiding a serious collision and possibly serious injuries to occupants of the bus. We do not find that the bus operator was guilty of any negligence whatsoever and that the sole and only cause of this accident was the sudden emergency created by the unknown vehicle running a red light immediately in the path of the bus.
Judgment affirmed.