BAILES, Judge.
This action arises out of an automobile accident which occurred on September 21, 1965, in the City of Baton Rouge, Louisiana, at the intersection of North Acadian Thruway and Mohican Street. In this suit, plaintiffs, husband and wife, seek to recover damages allegedly sustained by the plaintiff-wife, Emma Jane Winfield, while riding as a guest passenger in the vehicle driven by Thelma Leathers, this being one of the two vehicles involved in the collision. The plaintiff-husband seeks to recover special damages consisting of medical expenses, while his wife seeks to recover general damages for certain alleged physical injuries. The defendants are Thomas C. Smith, driver of the other vehicle, and his public- liability insurer.
The trial court held that Mr. Smith was guilty of no negligence in causing the damages suffered by plaintiffs, and accordingly denied plaintiffs’ claims. We find the trial court correctly resolved all issues. We affirm the judgment.
At the aforementioned intersection where the accident occurred, the Leathers vehicle was proceeding in a northerly direction, and the Smith vehicle was being driven in a westerly direction. The intersection is controlled by traffic semaphore lights. It was shown that the Leather’s vehicle was damaged across its front and the Smith vehicle received the impact on the left side near the front. The distinct impression we gain from the testimony of the witnesses is that the Smith vehicle was traveling at a slow rate of speed, having just started from a stopped position, whereas, the Leathers’ vehicle was traveling considerably faster.
It was the testimony of Thelma Leathers and Emma Jane Winfield that the light was green for the Leathers vehicle, and conversely, it was the testimony of Mr. Smith, as well as that of the driver of the second car to the rear of the Smith vehicle that the Smith vehicle had the' *858 green light. The latter two witnesses testified that Mr. Smith had stopped for the semaphore signal to change from red to green and when it did show green Mr. Smith drove into the intersection. Mr. Smith testified that he had traveled about sixteen feet when his vehicle was struck by the Leathers automobile.
The trial court was faced with the conflicting evidence as to which vehicle had the green light. It found that the defendant, Mr. Smith, had the green light, and in this finding we agree.
We find the following facts. Thelma Leathers, accompanied by her son who at the time of the trial was in school in Colorado, and plaintiff Emma Jane Winfield were proceeding in a northerly direction on North Acadian Thruway and that the vehicle in which they were riding was in continuous motion prior to and at the time of entering the intersection. Thelma Leathers was proceeding at a moderate rate of speed as she approached the intersection, and that prior to the time she entered the intersection the semaphore light changed from green to amber to red, and was red at the time she entered the intersection. We find that instead of stopping in obedience to the traffic control light, she attempted to drive through the intersection and in so doing struck the Smith vehicle. Mr. Smith, on approaching the intersection, and in point of time he arrived there before Thelma Leathers, he stopped for the red traffic semaphore light. There were at least two automobiles in rear of and in line behind Mr. Smith awaiting the change of the light. Immediately prior to the change of the light from red to green for west bound traffic on Mohican, another vehicle, occupied by a Mr. Hair, proceeding in a northerly direction on North Acadian Thruway stopped at the intersection in the inside traffic lane because of the red traffic light facing it. Mr. Smith testified that he looked to his left and noticed this car approach and stop at the intersection, and that he did not look further to his left to see if any other vehicles were coming. The first time he saw the Leathers vehicle was when it struck him in the intersection.
Plaintiffs virtually concede that Thelma Leathers ran the red light and that the Smith vehicle had the green light. While not admitting this fact in so many words, their argument would necessarily encompass such a fact. The plaintiff’s argument is that the defendant Smith was negligent in not seeing the Leathers vehicle although he looked to his left. It is their contention that had he not looked he would not have been negligent, however, as he did look but failed to see what he should have seen, he, Smith, was then negligent and is responsible for the resultant damages.
We find no testimony in the record to substantiate the argument of the plaintiffs. Mr. Smith testified that he was aware of vehicles in his lane behind him and that he saw the Hair vehicle stopped on North Acadian Thruway but he saw no other vehicles; that he did not look far to his left or south on North Acadian Thruway, and that he assumed any traffic on that street would obey the traffic light.
Our decision of this case is controlled by the law announced in the case of Youngblood v. Robinson (1960) 239 La. 338, 118 So.2d 431. After discussing the law applicable to motorists traveling on favored street and the lookout required at intersections controlled by stop signs, the Supreme Court stated:
“(2) * * * But when a crossing is protected by an electric semaphore light it is not essential for the favored driver to look for violations by side-street traffic facing the red light for that traffic is not only required to stop but to remain stationary until the semaphore changes to green.
“This Court has given implied recognition to this distinction and has specifically held that it is not necessary for one intending to traverse an intersection on *859 a green semaphore light to look to the left or the right before entering.”
Also see Bryant v. Ouachita Coca-Cola Bottling Company (1960) 239 La. 83, 117 So.2d 919; LeBeau v. Baton Rouge Bus Co. (1961) 136 So.2d 740; Marbury v. Arnold (1962) 142 So.2d 507; and Hunt v. West (1966) 187 So.2d 769.
For the foregoing reasons, the judgment appealed from is affirmed. Appellants to pay all court costs.
Affirmed.